Coos,
No. 6233.

STATE *v.* VINCENT P. CANNEY.

STATE *v.* VIRGIL E. HOWARD.

August 15, 1972.

*Warren B. Rudman,* attorney general, and *Henry F. Spaloss,* assistant attorney general, for the State.

*Remcho, Billow & Haroz* and *Gerald J. Billow* and *Michael J. Haroz,* of Massachusetts, and *Sulloway, Hollis, Godrey & Soden* and *Michael M. Lonergan* for the defendants.

LAMPRON, J. Each defendant was charged with the same two crimes: injuring property owned by a public utility, New England Telephone and Telegraph Company (RSA 572:3), and larceny of property having a value of one hundred dollars or more. RSA 582:3 (supp.). After a joint trial by jury both defendants were found guilty of the charges against them. All their exceptions, among which were those to the denial of their motions to set aside the verdicts, were reserved and transferred by *King*, J.

The general issue raised by the defendants on this appeal is whether there was sufficient circumstantial evidence to find them guilty. More particularly the defendants claim that the convictions were based on presumed circumstances and inferences drawn from other inferences and that all the proven circumstances do not exclude a reasonable inference of their innocence.

It is a well-established rule of criminal law in this State that circumstantial evidence may be sufficient to warrant the finding by a jury of guilt beyond a reasonable doubt. *State* v. *Gobin,* 96 N.H. 220, 73 A.2d 430 (1950); *State* v. *Mihoy,* 98 N.H. 38, 40, 93 A.2d 661, 662 (1953); *State* v. *Amero,* 106 N.H. 134, 207 A.2d 440 (1965). Proof by eyewitnesses or by direct evidence of the essential elements of the crimes or of their commission by defendants is not required. *Commonwealth* v. *Thomas,* 429 Pa. 227, 239 A.2d 354 (1968). The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree of certainty than proof beyond a reasonable doubt is required whether the evidence is circumstantial or direct. *State* v. *Smith,* 156 Conn. 378, 242 A.2d 763 (1968); *Commonwealth* v. *Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972).

It is within the province of the jury to draw reasonable inferences from the facts proved. Furthermore the jury can also draw inferences from facts which they found as a result of other inferences provided they can reasonably be drawn therefrom. *L'Esperance* v. *Sherburne,* 85 N.H. 103, 114, 155 A. 203 (1931); *State* v. *McGinnis,* 158 Conn. 124, 256 A.2d 241 (1969); 1 Wigmore, Evidence *s.* 41 (3d ed. 1940). Guilty verdicts having been rendered, in determining on this appeal

whether the evidence was sufficient to prove defendants guilty beyond a reasonable doubt, the evidence is to be construed in the light most favorable to the State with all reasonable inferences therefrom. *Commonwealth* v. *Cimaszewski,* 447 Pa. 141, 288 A.2d 805 (1972).

There was evidence that on July 22, 1970, at about 12:50 p.m., the telephone office in Littleton received notice that four telephone lines at the Crawford House Hotel were not functioning. At about 1:30 p.m. a telephone employee was dispatched to test the circuits and reported them dead. Upon further investigation it was found that all the wires in these circuits, which served the hotel and others, had been completely cut and removed between six poles. The distance above ground of these wires varied from 4 to 12 feet. Some of them could be reached by standing on a banking. They were uninsulated copper wires of two sizes which could be cut with a pair of pliers or wire cutters without any danger as they were battery energized with low power. All of the missing wires could have been cut by two persons in from four to six hours. They amounted to 750 feet or 983 pounds of wire. The price paid for such wire at the time of the incident was about 35 cents per pound or about $343 for the amount missing.

There was also evidence that Miller, a telephone employee, and a State trooper whom he had notified of the incident began walking, at about 2:15 p.m., along a railroad track which ran parallel to these telephone lines. Within about 15 minutes the officer saw two men by the track whom he identified as the two defendants. Defendant Howard was then coiling wire. The officer ordered the men to stop and fired two warning shots. The defendants ran and Miller hurried to the highway which was parallel to the tracks and telephone poles at that point. Miller saw one of the defendants enter an automobile with Maine registration plates. Another man was already in the car. It was a 1941 Nash four-door sedan owned by defendant Canney. Later that afternoon about 3:25 p.m., the trooper saw and stopped this same car with the two defendants as occupants. The officer found two pairs of plier cutters on the front seat of the car, a small piece of copper wire in the middle of the back seat. He

examined the trunk of the car which he found to be empty.

There was also evidence that this same car had been observed at between 9 a.m. and 10 a.m. that same morning parked along the highway at a point in the vicinity of where the defendants were seen later by the trooper. This same witness saw the car again between two and three that same afternoon parked on a side road at Allen's Spring located about 8 miles from where the wires had been removed from the poles. He advised the trooper and accompanied him the next day to the spring where they found about 12 or 14 rolls of wire of the same type as that taken. About 80 pounds of telephone wire was also recovered in the immediate area of the poles whose wires had been cut. A knapsack with defendant Howard's name thereon was found nearby.

Defendant Canney testified that he and defendant Howard were hiking at that location on that day. They were frightened when they heard the shots and ran to their car and started off. He stopped the car at Allen's Spring in order to relieve himself. He further testified that after thinking the matter over they decided to return to the scene of the shooting to determine what had happened. On the return trip they saw the trooper driving in the opposite direction and when they saw him turn around Canney slowed down his car and then was stopped by the trooper.

Canney admitted ownership of the pliers found in his car by the trooper and that they were in fact cutters which he had used on prior occasions to cut wire. He also testified on cross-examination that when they ran to the car after the shots were fired that there was a couple picnicking nearby but that they did not warn them about the gunfire. Nor did they make any attempt to stop the trooper and tell him about it when he passed them in his car. Canney also admitted that they had Howard's knapsack with them near the track where the trooper testified he saw Howard coiling wire.

We are of the opinion and hold that from the evidence presented and on the inferences which they could reasonably make therefrom the jury could properly find that the State had proved beyond a reasonable doubt all the elements of the crimes of which they found these defendants guilty. The trial court properly denied their motions to set aside the

verdicts of guilty.

*Exceptions overruled.*

KENISON, C.J., did not participate in the consideration or decision of this case; the others concurred.