Sullivan
No. 83-131

THE STATE OF NEW HAMPSHIRE

v.

STEVEN BENSON

April 13, 1984

*Gregory H. Smith,* attorney general (*Amy L. Ignatius,* attorney, on the brief and orally), for the State.

*Lanea A. Witkus*, of Newport, and *Mark G. Connors*, of Nashua (*Ms. Witkus* on the brief, and *Mr. Connors* orally), for the defendant.

BROCK, J. The defendant, Steven Benson, was convicted on a charge of second degree assault, RSA 631:2 (Supp. 1983), after a jury trial. The Superior Court (*DiClerico*, J.) sentenced him to 2 1/2 to 5 years in the State prison. On appeal, he alleges that the State's evidence was insufficient to support a finding of guilt beyond a reasonable doubt. We affirm.

The events at issue in this case occurred in the early evening of October 9, 1982, on Sunapee Street in Newport. A car occupied by Harley Norris, his brother Michael Norris, and a girl friend who was driving, was traveling down Sunapee Street toward the center of Newport when the occupants heard something strike the side of the car. Harley and Michael Norris got out of the car, and Harley Norris accosted the defendant Benson, who was standing or walking nearby.

Harley Norris forced Benson to the ground, and then threatened to cut his hair, asking his brother Michael for a knife. There was no evidence that any knife was produced, or that any existed. Harley Norris was then pulled off Benson by several of Benson's friends who appeared on the scene.

A general melee ensued, and Michael Norris testified that he was attacked by five or six people who jumped on him, kicked him, hit him in the head, threw him on the ground, tore his shirt, and eventually threw him across the road. From that position, he saw his brother lying face down on the ground, being kicked by three or four people, including the defendant. He testified that the defendant kicked his brother in the head at least twice.

The defendant denied either kicking Harley Norris or seeing anyone else kick him. He further testified that, within a minute of the time Harley Norris was pulled off him, he saw Harley Norris lying unconscious in the street and helped him into his car.

Harley Norris sustained numerous injuries, including multiple fractures of both cheekbones, a broken nose, and facial lacerations requiring ten stitches. He also suffered a concussion resulting in amnesia, giving him no memory of events from the time he was pulled off the defendant until he woke up in the hospital. The examining physician testified that the injuries were probably caused by "blunt objects," but that he could not say whether the actual cause was "a kick or a fist."

The defendant was convicted under RSA 631:2 (Supp. 1983), which reads in pertinent part:

"A person is guilty of a class B felony if he:

    I. Knowingly or recklessly causes serious bodily injury to another; or

    II. Recklessly causes bodily injury to another by means of a deadly weapon . . . ."

■ On review, we consider the evidence, with all reasonable inferences therefrom, in the light most favorable to the State, *State v. Canney*, 112 N.H. 301, 303, 294 A.2d 382, 383 (1972), and then "decide whether any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Bird*, 122 N.H. 10, 17, 440 A.2d 441, 445 (1982); *Jackson v. Virginia*, 443 U.S. 307, 324 (1978).

There can be no doubt that the evidence in this case meets this standard. Michael Norris' testimony, if credited by the jury, established that the defendant kicked Harley Norris in the head at least twice while the latter was lying unconscious on the ground.

■ Harley Norris undoubtedly suffered "serious bodily injury." *See State v. Kiluk*, 120 N.H. 1, 4, 410 A.2d 648, 650 (1980). The jury could reasonably infer from the testimony of the examining physician that the blows administered by the defendant's foot, which the defense concedes to be a deadly weapon under these circumstances, were a substantial cause of that injury. The act of kicking an unconscious person repeatedly in the head comes well within the definition of "recklessly" in RSA 626:2, II(c), and precludes any possibility that Benson could have been acting in self-defense. *See* RSA 627:4 (1974 and Supp. 1983). Accordingly, we hold that the evidence was sufficient to support a conviction of second degree assault under RSA 631:2 (Supp. 1983).

*Affirmed.*

All concurred.