Grafton
No. 84-242

THE STATE OF NEW HAMPSHIRE

v.

ROBERT W. LAROSE

August 15, 1985

*Stephen E. Merrill*, attorney general (*Robert B. Muh*, attorney, on the brief, and *Edna M. Conway* orally), for the State.

*McNamara, Larsen & Schuster P.A.*, of Lebanon (*Mark A. Larsen* on the brief and orally), for the defendant.

KING, C.J.    The defendant appeals from a jury verdict in Superior Court (*Johnson*, J.) finding him guilty of kidnapping, RSA 633:1 (Supp. 1983). We affirm in part, reverse in part, and remand.

The facts relevant to the issues raised on appeal are as follows.

The victim in this case, a nine-year-old girl, reported to her family that on the afternoon of May 23, 1983, a man had taken her in his car to a secluded area in Canaan, on the pretext of looking for his lost dog, and had sexually assaulted her at knifepoint prior to her escaping from him. The girl related her assailant's description, along with that of his car, to her family and to the police on several occasions. There were inconsistencies in some details in each of her descriptions.

On the day following the assault, the victim was shown the first of a series of photographic arrays (line-ups). At this time, the defendant's picture was not in the array, and the victim made no identification. Approximately two weeks later, after police investigation began to focus suspicion upon the defendant, a second array was prepared in which the defendant's picture was included. This time, the victim made a positive identification, choosing the defendant's picture. Also, at about the same time as the preparation of this second array, the girl identified a car in a dealership as being like that of her assailant. After being taken to the Vermont State Police barracks in Bethel, Vermont, where the defendant's car had been towed from his home in Woodstock, Vermont, she positively identified the car as his, based not only upon its general appearance, but also upon the fact that the passenger's door buckled, a fact that she specifically recalled from the incident.

After two further photographic line-ups were shown to the girl sometime later, a live line-up was conducted at the Grafton County Sheriff's Department in December, 1983. The girl again identified the defendant.

In addition to the identification by the victim, two other eyewitnesses, passersby on Route 118 on the day of the incident, made positive identifications of the defendant based on a photographic array similar to that shown to the victim. The defendant moved to suppress *inter alia* these photographic out-of-court identifications, but the trial court denied the motion.

At trial, the defendant relied on a defense of alibi, and introduced into evidence the testimony of his wife, step-children and one of the latter's fiancé which tended to place both the defendant and his automobile in Woodstock, Vermont, at the time of the assault in Canaan. He also relied heavily on the testimony of his expert witness, a professional psychologist, to the effect that the photographic identifications—which, along with in-court identifications, were the crux of the State's case—were biased against him. This testimony consisted largely of the results of field surveys in which the photographic line-ups at issue in the case were shown to individuals to whom the victim's descriptions of her assailant had been previously

read. The jury nevertheless found him guilty of the crime charged in the indictment, and the court imposed a sentence commensurate with a class A felony.

Defendant's post-trial motions to set aside the verdict and to sentence as a class B felony were denied after hearing. This appeal followed.

The defendant first argues that the trial court erred in denying his motion *in limine* to suppress certain portions of his prior criminal record. In the first place, the defendant claims that the State failed to comply with Superior Court Rules 68 and 58. Rule 68 requires that a party planning to refer to the prior criminal record of either a party or a witness for the purpose of assailing his credibility: (1) "furnish a copy of same to the opposing party or his counsel;" and (2) "obtain a ruling from the trial court as to whether the opposing party or a witness may be questioned with regard to any conviction for credibility purposes." SUPER. CT. R. 68. Since the defendant filed a motion *in limine* to exclude his prior convictions well in advance of trial in accordance with the procedure required by this court in *State v. Staples*, 120 N.H. 278, 285, 415 A.2d 320, 324 (1980), the State's non-compliance with Rule 68 is of no moment in the context of this case. Likewise, the State's compliance with Rule 58 presents no reviewable issue, since that rule merely permits the court to act upon a motion without a hearing if the party opposing the motion fails to request one, and to object to the motion; Rule 58 does not require the trial court to rule in the defendant's favor where, as here, the defendant filed the motion to suppress his prior criminal record. *See State v. Watson*, 120 N.H. 950, 952, 424 A.2d 417, 418 (1980).

The defendant next argues that the court erred in denying his motion to suppress his criminal record, because the State impermissibly sought to have the convictions introduced as substantive evidence and not merely for the purpose of impeaching the defendant's credibility if he chose to testify. That the State planned to use these particular convictions, if the defendant had taken the stand, is clear from the transcript of the motion hearing. Whether they could also have been admitted into evidence substantively was not a subject for decision in the context of this particular hearing, where the State predicated its remarks by referring to the introduction of these convictions "if he chose to take the stand. . . ." The fact that the State's argument in support of the use of these convictions for impeachment purposes was confused by language going to the issue of substantive use is ground for concern by this court, but the issue before us is only whether the trial court erred in ruling

admissible proof of these particular convictions for impeachment purposes. For this limited purpose, the convictions were admissible, and we find no error.

The defendant further argues that the trial court did not adequately make the record reflect that the two prior convictions for assault at issue here were to be let in for impeachment purposes, because their probative value outweighed the prejudice that might result from their use. We think that the trial court might have elaborated on its ruling, but we do not agree that the court made no adequate ruling on the matter. *See State v. Vanguilder,* 126 N.H. 326, 331, 493 A.2d 1116, 1120 (1985). Further inquiry by this court is unnecessary, because the defendant never took the stand; the State never introduced the prior convictions for impeachment purposes as limited by the trial court's ruling; and the jury thus never heard of the defendant's previous assaults. No prejudice to the defendant's case thereby resulted. If there is any substance to the claim that the trial court's ruling "chilled" the defendant's desire to take the stand in his own defense, we point to *State v. Wayne Kelley,* 120 N.H. 14, 18–19, 413 A.2d 300, 303–04 (1980), as dispositive of the claim.

The defendant's second argument is that the trial court erred in its denial of the defendant's motion to suppress out-of-court photographic identifications by the victim and two other eyewitnesses. It is his contention that these photographic arrays were biased, and that their use thus denied him due process of law. If they were impermissibly suggestive, then both the out-of-court arrays and any in-court identifications or evidence derived from them would have been inadmissible. *State v. Allard,* 123 N.H. 209, 213, 459 A.2d 259, 262 (1983).

■ A determination regarding the admissibility of an out-of-court identification involves a two-step analysis. *State v. Cyr,* 122 N.H. 1155, 1158, 453 A.2d 1315, 1317 (1982). Initially, we inquire into whether the identification procedure was impermissibly or unnecessarily suggestive. *Id.* At this stage of the inquiry, the defendant has the burden of proof. *Id.; see* R. McNamara, 1 New Hampshire Practice: Criminal Practice and Procedure § 230, at 144. Only if the defendant has met his burden must we then consider the factors enumerated in *Neil v. Biggers,* 409 U.S. 188, 199–200 (1972), and reiterated in *Manson v. Brathwaite,* 432 U.S. 98, 107 (1977), to determine whether the identification procedure was so suggestive as to render the identification unreliable and, hence, inadmissible. *State v. Cyr supra.* At this stage of the inquiry, the State bears the burden. *State v. Allard supra.* We conclude that in this case the defendant has not met his burden.

■ The defendant, with the assistance of research performed by his expert witness, contends that the photographic arrays from which the victim and two other eyewitnesses identified him were biased in their construction. He claims that, save for the defendant, at most only one of the other "suspects" in the three arrays bore any significant resemblance to the description provided to the police. The defendant would have this court respond to these assertions by agreeing to move our standard of review in such cases from a subjective test based upon our perusal of the evidence to an objective test based upon the results of psychological testing. We decline to do so.

■ We conclude that no impermissible suggestiveness exists in the photographic arrays at issue. We agree that there are certain distinctions to be drawn from the photographs in question; nevertheless, these distinctions are not so significant as to unduly suggest the defendant's selection. *Cf. State v. Heald,* 120 N.H. 319, 321–22, 414 A.2d 1288, 1290 (1980) (photographic array held unduly suggestive where component pictures were consistent with one another except for defendant's picture which alone corresponded to particulars of the eyewitnesses' description). When, as here, all the persons loosely fit the description given by the victim, even though they do not resemble one another, we cannot say as a matter of law that the photographic line-ups were impermissibly suggestive. *See Adkins v. Commonwealth,* 647 S.W.2d 502, 504–05 (Ky. Ct. App. 1982). Insofar as the defendant has not met his burden of showing impermissible suggestiveness of the out-of-court identifications, we need not reach the second step of the analysis laid out above. *State v. Cyr, supra* at 1159, 453 A.2d at 1317.

The defendant's third claim is that the failure of the State to comply with a pretrial order requiring the production of all photographic arrays upon which it intended to rely at trial should have resulted in a mistrial. During the initial stages of the trial, the State introduced into evidence a photographic line-up which had been shown to the victim on May 24, 1983, the day after the attack. The defendant's photograph was not included in this particular array, and after viewing it, the victim made no identification. Counsel for the defendant objected to the introduction of this evidence on the ground that the array had not been given to him in advance of trial. He moved for a mistrial for this reason. The trial court denied the motion, ruling that because the defendant had not been in the array, the State's use of the array was not prejudicial to the defense.

The defendant's motion to produce, dated November, 1983, had requested that the State provide him with copies "of the photo-

graphs used in the photo arrays upon which it [*i.e.*, the State] intends to rely on at trial." The trial court had granted this motion in December, 1983. The issues before us, then, are whether the State's suppression of this particular array worked to prevent the defendant from adequately preparing for trial, and whether the trial court's decision both to allow the photographic array into evidence over objection and to deny a motion for a mistrial constituted reversible error.

■■ We have repeatedly and consistently upheld the inherent authority of the trial court to exercise its sound discretion in matters relating to pretrial discovery. *State v. Sorrell*, 120 N.H. 472, 475, 416 A.2d 1375, 1377 (1980). Even if the trial court's ruling allowing in this evidence was error, such an exercise of the discretion of the trial court would not be harmful error unless it was shown to have prejudiced the substantive rights of the defendant. *Id.* We disagree that the actions of the trial court prevented the defendant from adequately preparing his defense.

■ In the instant case, the trial court took care to protect the defendant's interests by allowing counsel sufficent time to consult with his expert on the construction and use of the photographic array. Defendant's counsel had the material available to him from the first full day of trial. Insofar as this particular array might have bolstered the credibility of the victim, cross-examination was freely available to the defendant in order to convince the jury otherwise. *State v. Sorrell, supra* at 475, 416 A.2d at 1378. Under these circumstances we are satisfied that the defendant's ability to prepare his defense was not unduly prejudiced.

■ The defendant also attacks the sufficiency of the State's evidence. At trial, the evidence must be sufficient to prove every element of the offense charged beyond a reasonable doubt. *State v. Holt*, 124 N.H. 645, 647, 474 A.2d 1031, 1033 (1984). On review, however, this court will consider all the evidence, with all reasonable inferences drawn therefrom, in the light most favorable to the State. *State v. Benson*, 124 N.H. 767, 769, 474 A.2d 576, 577 (1984); *State v. Canney*, 112 N.H. 301, 303, 294 A.2d 382, 383 (1972). The evidence adduced at trial is insufficient to support the verdict only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *State v. Martin*, 121 N.H. 1032, 1034, 437 A.2d 308, 309 (1981) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).

This burden of a defendant who appeals his conviction is heavy, and we believe that the defendant in this case has not met it. The

nub of this case was the reliability of eyewitness identification. The victim of the assault gave varying descriptions of her assailant; however, given her age and the traumatic nature of the incident, the salient descriptive points of her account were not so completely at variance one with the other that her credibility was destroyed. The line-ups conducted by the police were, in fact, good evidence of the victim's powers of observation and recall. She did not identify any members of the first photographic array in which there was no picture of the defendant. She did make a positive identification upon viewing a second such array in which the defendant's picture had been placed. She also identified the defendant in a live line-up. In addition, she made a positive identification of the defendant's car. A rational trier of fact could have found that this evidence demonstrated genuine recognition of the defendant in an uncoerced setting.

There was corroborative evidence of photo identifications made by two other eyewitnesses. Their descriptions both of the car and of the suspect-occupant of it reasonably met those of one of the defendant's vehicles and the defendant himself. Finally, the circumstances surrounding these photographic line-ups also appear to us unexceptional and untainted. In both the case of the victim's eyewitness identification and that of the other two eyewitnesses, it was for the jury to weigh the admissible evidence, and unless no rational person could reach the same conclusion, the jury's findings must be upheld on appeal. *State v. Goupil*, 122 N.H. 857, 859, 451 A.2d 1284, 1285 (1982). We decline to disturb the jury's finding.

Opposing the aforementioned evidence of the State was the testimony of the defendant's wife, his step-children and the fiancé of one of the latter. Their recollection of the events of the day of the attack was generally uncontradicted; nevertheless, the jury was entitled to reject testimony if it so chose, *State v. Goupil, supra* at 859, 451 A.2d at 1286, or to resolve conflicts in the evidence against them, *State v. Sliz*, 124 N.H. 389, 391, 469 A.2d 1357, 1359 (1983); *State v. Berry*, 117 N.H. 352, 355, 373 A.2d 355, 357 (1977).

Therefore, considering all the evidence in the light most favorable to the prosecution, *State v. Goupil supra*, we refuse to hold that no reasonable person could find the defendant guilty beyond a reasonable doubt. *State v. Martin*, 121 N.H. at 1034, 437 A.2d at 309. We therefore find the evidence constitutionally sufficient.

The defendant's final claim is that, although the jury was instructed as to the elements of the class B felony, he was sentenced as if convicted of a class A felony. Defendant cites language in *State v. Goodwin*, 118 N.H. 862, 395 A.2d 1234 (1978) for support. The

claim is that the trial court erred in merely charging on the elements of confinement and commission of an offense against the victim.

■ We find the defendant's claim to be meritorious. In *Goodwin*, we stated that a valid instruction on the class A felony of kidnapping required submission to the jury of the element of "serious bodily injury before being released in a safe place." *Id.* at 869, 395 A.2d 1238; *see* RSA 633:1, II. A defendant is guilty of the class A felony of kidnapping only if the jury finds that the evidence establishes both the class B felony of kidnapping as defined in RSA 633:1, I, and the elements of a class A felony set forth in RSA 633:1, II. Accordingly, in order to convict a defendant of the class A felony of kidnapping, the jury should be instructed along the following lines:

> "If you find that the evidence established beyond a reasonable doubt the elements of the crime of kidnapping as I have just explained them to you, then the defendant is guilty of a class B felony.
> "If you further find that the evidence established beyond a reasonable doubt that the defendant either failed voluntarily to release the victim without serious bodily injury, or did voluntarily release the victim, but in an unsafe place, then the defendant is guilty of a class A felony."

In the case at bar, the instruction actually given to the jury embraced only the language of RSA 633:1, I; consequently, under our holding in *Goodwin*, the failure to delineate those further factors enumerated in RSA 633:1, II meant that only a class B felony kidnapping issue was submitted to the jury.

The defendant raised his objection in a timely fashion at the sentencing hearing, at which time the court sentenced the defendant in accordance with a conviction for the class A felony of kidnapping. *See* RSA 651:2, II(a). To the extent that the trial court pronounced sentence consistent with the greater offense, it erred in usurping the function of the jury as fact-finder. *Goodwin*, 118 N.H. at 869, 395 A.2d at 1238; *see also State v. LeClair*, 118 N.H. 214, 221, 385 A.2d 831, 835 (1978). As we indicated in *Goodwin*, "[b]y this action, defendant was deprived of his right to have the jury decide whether the State met its burden of proof on all the elements required to support a conviction for felony A kidnapping." *Goodwin*, *supra* at 869, 395 A.2d at 1238.

■ The class A felony kidnapping conviction must fall. The jury was instructed only on the elements of the class B felony of

kidnapping; its guilty verdict can therefore support a sentence only for that offense. Accordingly, we order that the sentence of the trial court imposed for the class A felony of kidnapping be vacated, and that the case be remanded to the trial court for sentencing consistent with class B felony standards.

*Affirmed in part; reversed in part; remanded.*

All concurred.