Strafford
No. 89-020

THE STATE OF NEW HAMPSHIRE

v.

LIAM COLLINS

October 17, 1990

*John P. Arnold*, attorney general (*Mark E. Howard*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The defendant appeals his burglary conviction, claiming that the Superior Court (*Nadeau*, J.) erred: (a) in refusing to apply collateral estoppel by adopting findings made with respect to suppression issues in an earlier habeas corpus proceeding; (b) in recognizing the authority of a business vehicle's owner to consent to its search; and (c) in permitting retrial for burglary when the court at the first trial gave an erroneous instruction on an element of the offense. We affirm.

The defendant, Liam Collins, was first convicted of burglary in 1986, after which he sought relief on petition for habeas corpus, alleging ineffective assistance of counsel and erroneous jury instructions said to have violated due process. The Superior Court (*Groff*, J.) ordered a new trial. The court found that trial counsel's failure to move for suppression of certain evidence, which the court would have held inadmissible, had deprived the defendant of effective assistance, to his prejudice. The court also concluded that an erroneous jury instruction on one element of the offense had worked a denial of due process.

Prior to retrial, the defendant sought to suppress statements and certain real evidence and moved for favorable rulings as a matter of law on the theory that the State was collaterally estopped to reliti-

gate the conclusions reached by Groff, J., that the evidence in question would have been suppressed in response to an appropriate motion at the first trial. The Court (*Nadeau*, J.) declined to recognize any such preclusion and denied a motion to suppress evidence seized from a truck entrusted to the defendant by his employer. Nadeau, J. also declined to limit the charge on retrial to a lesser-included offense, as a consequence of the first trial's erroneous jury charge on one of the elements of burglary. The defendant's second conviction led to this appeal.

The defendant's claim that at the second trial the State should have been estopped collaterally from litigating the motions to suppress evidence is concededly without constitutional significance, *cf. Ashe v. Swenson*, 397 U.S. 436, 445 (1970); *State v. Fielders*, 124 N.H. 310, 312, 470 A.2d 897, 898 (1983), since a habeas proceeding is civil in nature, *see Riddle v. Dyche*, 262 U.S. 333, 335–36 (1923); R. MCNAMARA, 2 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 1001, at 178 (1980). The issue before us is therefore one of common law, whether conclusions about evidentiary admissibility made in the course of habeas review should preclude the State from relitigating those admissibility issues in response to a defense motion prior to a subsequent trial required by the terms of habeas relief.

Although the parties have addressed the conditions necessary for such issue preclusion at some length, *see Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987), we rest our decision on the more fundamental ground that collateral estoppel should not be recognized as between the litigation of a defendant's habeas petition seeking a new trial and his subsequent retrial on criminal charges. Our reasons emerge from examining the parties' respective responsibilities in the two proceedings.

A petitioner for writ of habeas corpus bears the burden of proving entitlement to relief, *see State v. Hesse*, 117 N.H. 329, 331, 373 A.2d 345, 346 (1977), and a defendant who invokes a trial court's post-trial jurisdiction to grant a new trial based on prejudice from ineffective assistance of counsel likewise bears the entire burden of proof, *see State v. Faragi*, 127 N.H. 1, 5, 498 A.2d 723, 726 (1985). If, however, a conclusion about evidentiary admissibility reached in the habeas proceeding could estop the State from relitigating that issue prior to any new trial, the State would be bound for all practical purposes to assume the burden of fully litigating the merits of sup-

pression at the habeas stage. The burden of proof in the habeas proceeding would devolve in fact upon the State, just as it rests in law upon the State in any true suppression hearing, *see State v. Palamia*, 124 N.H. 333, 336, 470 A.2d 906, 907–08 (1983) (to justify admitting fruits of warrantless arrest); *State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555 (1978) (to show post-*Miranda* waiver); *State v. Phinney*, 117 N.H. 145, 146, 370 A.2d 1153, 1153 (1977) (to show voluntariness of statement); *State v. Slade*, 116 N.H. 436, 437, 362 A.2d 194, 195 (1976) (to show lawfulness of search and seizure). If collateral estoppel were thus to be predicated on the result of enquiring into a suppression issue at a habeas hearing, the resulting effective shift of the burden of proof would tend to inflate the scope of such habeas litigation, and would run counter to the policy underlying the presumption of regularity attending any judgment pending demonstration of its taint with some error. *See, e.g., State v. Dayutis*, 127 N.H. 101, 104, 498 A.2d 325, 328 (1985); *see also* 31A C.J.S. *Evidence* § 145 (1964). To accord a preclusive effect to such a habeas finding would, moreover, create a whimsical disparity between the consequences of relief awarded after habeas proceedings and after motions for new trial: the prior judgment of the completed habeas proceeding would support collateral estoppel, *cf.* RESTATEMENT (SECOND) OF JUDGMENTS §§ 13, 27 (1982), whereas the ruling on a prompt post-trial motion for new trial would produce no judgment (because rendered within a continuing criminal case) and no estoppel. *See Daigle v. Portsmouth supra* (no estoppel without prior final judgment); RESTATEMENT (SECOND) OF JUDGMENTS *supra*. Such disparate procedural consequences would, of course, discourage any defendant from expeditiously raising an ineffective assistance claim by means of a motion for new trial. These unjustifiable anomalies are avoided by our holding that the determination of a suppression issue, insofar as necessary for purposes of habeas, raises no estoppel barring litigation of that issue at a subsequent new trial necessitated by the terms of the habeas relief.

The second assignment of error goes to the receipt into evidence of a shoe found in a truck used by the defendant in his employment, but owned by his employer. Immediately after the crime, the police learned that the perpetrator had entered the victim's apartment without using force, and other evidence pointed to the apartment complex's maintenance man, the defendant, as the burglar. The police promptly arrested him, and in subsequent questioning the defendant mentioned that during the evening he had used a pickup

truck that was assigned to him as an incident of his employment. The police then got permission from the owner of the apartment complex to search the truck, in which they found the mate to a shoe or moccasin discovered under the window from which the burglar had jumped in leaving the victim's apartment.

The defendant moved to block evidentiary use of the second shoe. The testimony at the motion hearing showed that the defendant was permitted to use the truck for personal errands as well as for business purposes, that he possessed the only set of keys to it, that no other employee of the complex was allowed to use it without his permission, and that the owner made no use of it himself. On these facts, the defendant argued that the owner's permission was inadequate to authorize the police's search, the fruits of which were therefore said to be subject to suppression.

■ In reviewing this issue, we look only to the fourth amendment, since the defendant's brief made no reference to part I, article 19 of the State Constitution. *See State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986). If we start with the assumption that in using the truck the defendant was entitled to entertain an expectation of privacy against the government, the relevant fourth amendment enquiry rests on the premise that consent can exempt a search from the requirements of a warrant supported by probable cause, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973), and that such consent need not always be obtained from the defendant against whom the fruits of the search are to be used as evidence, *see Coolidge v. New Hampshire*, 403 U.S. 443, 487–90 (1971); *Frazier v. Cupp*, 394 U.S. 731 (1969). Although there is some support for the blanket proposition that a defendant's private employer may supply such third-party consent to search business premises and instrumentalities, even when these are reserved for the defendant's use to the exclusion of other employees and the general public, *see Mancusi v. DeForte*, 392 U.S. 364, 369–70 (1968), the safer course is to scrutinize the efficacy of an employer's consent in light of *United States v. Matlock*, 415 U.S. 164 (1974).

In *Matlock*, third-party consent to search a bedroom had been obtained from a woman who occupied that room as a cohabitant of the male defendant, who rented the room from the woman's mother. On these facts, there was no possibility of arguing that the constitutional adequacy of the permission derived from the superior status of the third party over the defendant or the superiority of the third party's rights to deal with the room. Whatever the third party's au-

thority might be, it had to be derived either from the defendant, to whom the room was rented, or from the third party's mother, who as a joint lessor of the entire house had rented the room to the defendant. Despite these obvious differences from this case, the *Matlock* Court's synthesis of the existing law on third-party consent is instructive here.

The prosecution was said to be entitled to show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *Id.* at 171. On the facts before it, the *Matlock* Court did not understand the "other sufficient relationship" prong to be applicable, and it concentrated instead on explaining the nature and source of "common authority." For a third party's "common authority," a "mere property interest" was neither sufficient nor necessary: insufficient, because *Chapman v. United States*, 365 U.S. 610 (1961) (lessor's consent not generally good against lessee), and *Stoner v. California*, 376 U.S. 483 (1964) (hotel clerk's consent not normally effective against registered occupant), had so held, *Matlock*, 415 U.S. at 171 n.7; unnecessary, because such authority could be inferred from "mutual use of the property by persons generally having joint access or control for most purposes . . . ," *id.* The requisite conclusions about common authority, to be drawn from the facts of mutual usage, were said to be that the third party had "the right to permit the inspection in his own right and that the others [had] assumed the risk that one of their number might permit the common area to be searched," *id.*

■■■■ This summary indicates why we disagree with the defendant before us, whose argument assumes that a third party's right to consent must be derived from "mutual use" of the premises in question. "Mutual use" indicates one source of authority, but some "other . . . relationships" may be "sufficient." That aside, we nonetheless do read *Matlock*'s further discussion about "common authority" as relevant in two respects to the enquiry into the sufficiency of some other relationship as a source of authority to consent. First, legal title cannot be regarded as dispositive. Second, the facts relevant to determining whether a relationship gives rise to authority to consent are facts bearing on the third party's authority to permit inspection "in his own right" and on a defendant's assumption of the risk that a third party so authorized might give the permission in issue.

■■■■ The relationships bearing on the third party's right in this case arise from his ownership of the truck and his employment of the

defendant. Insofar as ownership is considered apart from the employment, it of course supports the claim of right to authorize inspection, and there is nothing about an employment relationship *per se* that suggests anything to the contrary. Entrusting a truck to an employee does not, without more, imply any limitation on the employer's continuing right to deal with the truck as he sees fit or to allow others to have access to it.

■ Although the defendant stresses that he had what he calls the "exclusive" right to use the truck, the evidence proves nothing more than the defendant's authority, derived from his employer, to control the access of other employees to the vehicle. Although the employer did not use the truck himself, his inactivity does not reasonably imply an agreement with his employee to observe some limitation on his rights as an owner of business property to deal with it in whatever way he might think appropriate. Neither the employee's authority to control access of other employees, nor the employer's failure to use the truck, carry implications comparable to the lease of a house or rent of a hotel room, which by their very nature are understood to limit the owner's discretion to use the property during the term of the agreement. We therefore conclude that the record supports the first inference necessary to uphold the trial court, that the third party had and retained authority in his own right to consent to the search.

■ ■ The defendant stresses another fact, however, that he had the owner's permission to use the truck for personal travel as well as for the discharge of his maintenance duties, a fact that counts against the second required inference, that the defendant must have assumed the risk that his employer would give permission to search. While we agree that this fact does bear on the extent to which the defendant can reasonably be said to have assumed the risk that his employer would authorize a search, we do not believe its significance is dispositive on the facts before us. The fact is relevant because a right to make personal use of space in a building or vehicle may fairly be understood to be a right to use it as a repository for one's belongings, as free as one's own property would be from the risk of intrusion by the employer and by police armed with the employer's permission. Such an expectation would be limited, of course, by the duration of the permission, and in the absence of an agreement to allow personal use for a specific period of time, the expectation would endure subject to the employer's discretion. But until the permission was revoked and its revocation communicated to the employee, it

would be arguable that the employee could assume that the employer would not open the building or vehicle to the police simply to facilitate a criminal investigation unconnected with the employment relationship.

 Such an expectation that the employer would not enter or permit a police search would be wholly unreasonable, however, as against an employer with reason to believe that the employee's space in the building or vehicle itself had been used in the course of committing a crime, especially if the victim was the employer's customer whom it was the employee's duty to serve. An employee could hardly infer that a right to make personal use of a vehicle carried the implication that his employer had somehow barred himself from giving the police access to a business instrumentality that he had reason to believe the employee had used in breach of his employment obligation as well as of the criminal law.

 The employer in this case had an affirmative duty to protect his tenants, which is distinct from and independent of any citizen's general obligation to aid in the detection of crime. The employer's own interest is thus identical with the interest of the government in detecting crime, and in these circumstances, no employee could sensibly understand his employer to have limited his own power to detect crime in his own business by placing business property off-limits to the police, simply because the employee was allowed to make personal use of that property when he was not using it to discharge his assigned business responsibilities. The employer's permission was thus adequate consent under *Matlock* to dispense with the fourth amendment's warrant requirement, and the trial court correctly refused to suppress evidence consequently obtained. *Accord United States v. Carter*, 569 F.2d 801, 804 (4th Cir. 1977), *cert. denied*, 435 U.S. 973 (1978).

The defendant's final issue on appeal deserves only summary treatment. The elements of burglary include unauthorized entry with intent to commit a crime within a building or separately occupied segment of it, RSA 635:1, and the indictment charged that the defendant entered the victim's apartment with intent to commit the crime of assault. At the first trial, the jury charge was concededly inadequate to define criminal assault, with the result that it was open to the first jury to convict the defendant of burglary without finding any element of that offense beyond unlawful entry, which is nothing more than criminal trespass as defined by RSA 635:2, I.

 The defendant argues that it was therefore permissible to retry him only for criminal trespass, not for burglary. His logic escapes us. Since he claims no constitutional authority for this proposition, he impliedly concedes that the error infecting the first burglary conviction is not tantamount to an acquittal on the burglary charge so as to raise a bar of double jeopardy to retrial on burglary. *Cf. Green v. United States*, 355 U.S. 184, 191 (1957). Although he relies, rather, on cases exemplified by *State v. LaRose*, 127 N.H. 146, 497 A.2d 1224 (1985), they are not in point. *LaRose* held that on a guilty verdict following an instruction that charged the elements only of class B kidnapping, the trial court could not sentence for the more serious class A variety. *Id.* at 154–55, 497 A.2d at 1231–32. The case did not hold that a reversibly erroneous charge on class A would have precluded retrial for class A. That case, like the one before us, would be governed by the usual rule that a "former prosecution will not support a defense of double jeopardy where the trial court has set aside the conviction for proper reasons on the motion of the defendant." *State v. Siel*, 122 N.H. 254, 258, 444 A.2d 499, 502 (1982). There being no other bar, the defendant was properly retried for burglary.

*Affirmed.*

HORTON, J., did not sit.