Hillsborough
No. 92-162

THE STATE OF NEW HAMPSHIRE

v.

DOUGLAS SURETTE

March 30, 1993

*John P. Arnold,* attorney general (*John A. Curran,* attorney, on the brief), by brief for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief for the defendant.

HORTON, J.   The defendant, Douglas Surette, was convicted following a jury trial in Superior Court (*Murphy,* J.) of being a felon in possession of a dangerous weapon, RSA 159:3. On appeal, the defendant claims that there was insufficient evidence to support a finding that the so-called "zip gun," which formed the basis of his arrest, constituted a dangerous weapon. We reject the defendant's claim and affirm.

On May 27, 1991, police officers were dispatched to the defendant's residence on Elm Street in Manchester in response to a reported suicide attempt. The officers found the defendant in his apartment holding a so-called "zip gun" to his mouth. The device was constructed from a plastic pen casing with a bullet affixed to one end. A section of wire had been inserted in the casing and secured to a rubber band. When approached by the officers, the defendant pulled down on the rubber band as he held the zip gun to his mouth. The officers subdued the defendant and confiscated the zip gun. The defendant, who has a criminal record, was arrested and later indicted for being a felon in possession of a dangerous weapon. Under RSA 159:3, it is a class B felony for a convicted felon to "own or have in his possession or under his control a pistol, revolver, or any other firearm, or slungshot, metallic knuckles, billies, stiletto . . . or any other dangerous weapon."

At trial, the defendant's primary contention was that the State could not establish that the zip gun was a dangerous weapon because the State had not tested the defendant's zip gun to determine if it was capable of being discharged. The State, however, called as witnesses the arresting police officers, who testified that they had recognized the device taken from the defendant as a zip gun based on their prior experience with such weapons. The State also called a firearms expert, who testified generally about the construction and operation of such devices. The expert explained that a zip gun is fashioned by running a piece of wire through a plastic tube, and then connecting the wire to a rubber band. The wire functions as a firing

pin, and the rubber band serves as a firing mechanism to propel the wire into a bullet attached to the top of the tube. The expert testified that the device found in the defendant's possession was a zip gun. His testimony regarding the operation of a zip gun was based on, and illustrated by, the subject weapon.

At the close of evidence, the defendant moved for a directed verdict. He argued that because the State had not established that the defendant's zip gun was capable of being fired at the time of his arrest, there was insufficient evidence that the device was a dangerous weapon within the meaning of RSA 159:3. The superior court denied the motion, but instructed the jurors that "to find that the defendant in this case possessed a dangerous weapon, the State must prove beyond a reasonable doubt that the instrument, this zip gun . . . was capable of being discharged and inflicting bodily injury at the time that he possessed it." The jury convicted the defendant of one count of being a felon in possession of a dangerous weapon. On appeal, the defendant contends that the trial court erred in denying his motion for a directed verdict.

■■ In an appeal of the denial of a motion for a directed verdict based on sufficiency of the evidence, the defendant carries the burden of proving that "no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt." *State v. Evans*, 134 N.H. 378, 383, 594 A.2d 154, 158 (1991) (quotation omitted). The jury is free "to determine the weight and credence to be given the evidence at trial, and to reject any inferences urged by the defendant." *Id.* at 384, 594 A.2d at 158 (citation and quotations omitted).

■■ We hold that the State's evidence was sufficient to support a finding that the defendant possessed a dangerous weapon. We note that if, as the jury found, the zip gun was capable of discharge at the time of the defendant's arrest, as a matter of law it would constitute a dangerous weapon. Although the defendant's zip gun had not been test fired, we join courts in other jurisdictions which have held that proof of a firearm's operability can be established beyond a reasonable doubt by testimony of witnesses who were in a position to observe the weapon and the circumstances surrounding the crime. *See, e.g., State v. Murphy*, 49 Ohio St. 3d 206, 208, 551 N.E.2d 932, 935 (1990); *Commonwealth v. Layton*, 452 Pa. 495, 498, 307 A.2d 843, 844 (1973).

At trial, the arresting police officers provided a firsthand description of the defendant's zip gun and noted they had recognized the

device as a result of their prior experience with similar weapons. In addition, the officers explained that the defendant had handled the zip gun in a manner indicating that he had every expectation that the device, if manipulated correctly, would discharge. This is not a case where testimony was offered as a substitute for a weapon that had been lost or was otherwise unavailable. *Cf. State v. Gantt*, 101 N.J. 573, 578, 503 A.2d 849, 850 (1986); *State v. Millett*, 392 A.2d 521, 527 (Me. 1978). To the contrary, the State's firearm expert had examined the defendant's zip gun before trial and gave uncontested testimony that the device was a zip gun. In addition, the jurors themselves were allowed to examine the zip gun to evaluate the accuracy of description testimony provided by the State's witnesses.

We conclude that the State's evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant's zip gun constituted a dangerous weapon, and thus affirm.

*Affirmed.*

All concurred.