Grafton
No. 99-249

THE STATE OF NEW HAMPSHIRE

v.

DANA DECOSTA

May 9, 2001

*Philip T. McLaughlin*, attorney general (*Richard J. Lehmann*, assistant attorney general, on the brief, and *Stephen D. Fuller*, assistant attorney general, orally), for the State.

*Boyle Law Office, P.C.*, of Plymouth (*Gerard J. Boyle* on the brief and orally), for the defendant.

DALIANIS, J. After a jury trial in Superior Court (*Morrill*, J.), the defendant, Dana DeCosta, was convicted of one count of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996) (amended 1999), one count of felonious sexual assault, *see* RSA 632-A:3 (1996) (amended 1997), six charges of giving an alcoholic beverage or liquor to a minor, *see* RSA 179:5 (1994), and one charge of exhibiting or otherwise making available obscene material, *see* RSA 650:2 (1996). On appeal, he argues that: (1) the trial court erroneously allowed an expert to testify about child sexual abuse accommodation

syndrome; (2) the aggravated felonious sexual assault and felonious sexual assault indictments are duplicative; (3) the State failed to prove that three or more incidents of penetration occurred within the time frame alleged in the aggravated felonious sexual assault indictment; (4) the State failed to prove the time frame during which he gave alcoholic beverages to a minor; (5) the State failed to produce any image or any physical evidence to prove obscenity; and (6) the trial court failed to instruct the jury that State law prohibits the defendant from presenting evidence about the victim's sexual history. We reverse the conviction for exhibiting obscenity and affirm the remaining convictions.

Based upon the evidence presented at trial, the jury could have found the following facts. Beginning in October 1997, the victim, the defendant's thirteen-year-old niece, regularly went to the defendant's home in the morning before school to babysit for the defendant's children while his wife was at work. The victim testified that in mid-October, the defendant began asking her to remove her clothing, and although she initially refused, she eventually complied. In January 1998, the victim began routinely spending the night at the defendant's home. The victim testified that thereafter the defendant began touching her breasts and vagina. This behavior escalated, and on June 19, 1998, the defendant had sexual intercourse with the victim.

## I. Child Sexual Abuse Accommodation Syndrome Testimony

The defendant first argues that the court erred in permitting the State's expert, Dr. Nancy Strapko, to testify about child sexual abuse accommodation syndrome because it "is not a recognized syndrome and does not exist."

Pursuant to New Hampshire Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"The decision to admit expert testimony rests within the sound discretion of the trial court. We will reverse this decision only if the appealing party can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the party's case." *State v. Sargent*, 144 N.H. 103, 104 (1999) (citation and quotation omitted). Here, the trial court did not abuse its discretion in admitting Dr. Strapko's testimony.

In *State v. Cressey*, 137 N.H. 402 (1993), we held that the State may offer expert testimony regarding child sexual abuse accommodation syndrome to "explain[] the behavioral characteristics commonly found in child abuse victims to preempt or rebut any inferences that a child victim witness is lying." *Id.* at 412. The State, however, may not offer expert testimony "to prove that a particular child has been sexually abused." *Id.*

■ The defendant contends that the trial court was obligated to hold a hearing, outside the presence of the jury, to determine the validity and reliability of child sexual abuse accommodation syndrome. Our review of the record, however, reveals that the defendant never requested a hearing, either in his motion *in limine* or at trial. Additionally, as noted above, we have previously recognized that expert testimony to educate the jury about general characteristics of sexually abused children is valid as long as the testimony is not offered to prove that a particular child was abused.

■ The defendant further argues that Dr. Strapko had no expert qualifications to discuss child sexual abuse accommodation syndrome. The State contends that the defendant failed to preserve this argument for appeal. When the State moved to have Dr. Strapko recognized as an expert, defense counsel stated, "I don't object to her being recognized as to her doctorate level of psychologist and an expert in the field of sexuality. I do object to her being recognized as an expert in what the prosecutor just described as child sexual abuse accommodation syndrome — which is not a recognized syndrome and does not exist." Even assuming that this objection is sufficient to challenge her qualifications, we conclude that the trial court did not abuse its discretion in qualifying Dr. Strapko as an expert. Dr. Strapko testified that she has been a teacher for twenty-six years in the area of human sexuality, mental health and counseling. She is a private therapist, working mostly with adult male sex offenders, as well as sexual assault victims. Additionally, she has done research concerning sexual offenses and has written about child sexual abuse.

■ The defendant also contends that Dr. Strapko's testimony was inadmissible because it was designed to reinforce the victim's credibility and not designed to educate the jury. The defendant argues that Dr. Strapko's extensive testimony regarding the tendency of victims to delay disclosure of abuse equates to vouching for the truthfulness of the victim. We disagree. Dr. Strapko testified about child sexual abuse in general and did not offer an opinion as

to whether this victim had been abused. *See Cressy*, 137 N.H. at 411. Dr. Strapko testified that she had never met the victim and that she did not know the facts of this case.

■ The defendant points to a portion of Dr. Strapko's testimony where, in response to defense counsel's questioning, she testified that "we always believe the child when they disclose [something of a sexual nature]." Dr. Strapko qualified this assertion, stating that she believes the child until investigation proves otherwise. By testifying that those in the psychological profession generally believe a child when abuse is disclosed until investigation proves otherwise, Dr. Strapko was not vouching for this particular victim's credibility. Further, it was defense counsel who elicited this testimony. Although we hold that, in this case, Dr. Strapko's testimony was permissible, we caution trial courts to be vigilant in ensuring that an expert's testimony does not cross the line into the impermissible realm of vouching for the victim's credibility.

*II. Duplicative Indictments*

The defendant next argues that indictment 98-S-383 and indictment 98-S-384 are duplicative and thus violate Part I, Article 16 of the State Constitution.

Indictment 98-S-383 charges that the defendant, between October 1, 1997, and June 19, 1998, committed

> **Aggravated Felonious Sexual Assault**, in that he did knowingly engage in a pattern of sexual assault, by engaging in sexual penetration . . . to wit, on three or more occasions . . . engaging in digital penetration of the [victim's] vagina . . . .

Indictment 98-S-384 charges that the defendant, on June 19, 1998, committed

> **Felonious sexual assault**, in that he did knowingly engage in sexual penetration . . . to wit, sexual intercourse with [the victim] . . . .

The jury convicted the defendant of both offenses. He received a sentence of ten to twenty years in the State Prison on the aggravated felonious sexual assault charge and three and one-half to seven years on the felonious sexual assault charge.

The defendant contends that conviction for both indictments violates his right not to receive multiple punishments for the same offense. He argues that the two indictments are duplicative of each

other in that both allege "that the conduct is between the same parties, occurring on the same date (June 19, 1998) and constitutes the same offense, namely sexual penetration." We disagree.

Part I, Article 16 of the State Constitution

> protects a defendant from multiple punishments for the same offense. Two offenses will be considered the same unless each requires proof of an element that the other does not. Thus, multiple indictments are permissible only if proof of the elements of the crime as charged will in actuality require a difference in evidence.

*State v. MacLeod*, 141 N.H. 427, 429 (1996) (quotations, citations, brackets and italics omitted). Here, the elements of each crime charged required proof of an element that the other did not. *See* RSA 632-A:2, I(j); RSA 632-A:3, II. Specifically, indictment 98-S-383 charged that the defendant digitally penetrated the victim on three or more occasions and indictment 98-S-384 charged that the defendant engaged in sexual intercourse with the victim.

■ The defendant argues that because "sexual penetration" includes either the use of a sexual organ or digital penetration, the elements are the same for both offenses. We disagree. Each indictment charged separate crimes. *Cf. State v. Bussiere*, 118 N.H. 659, 661 (1978). In *Bussiere*, the defendant faced two indictments charging him with violations of RSA 632-A:2 (1977). *See id.* at 660. One indictment alleged that the defendant engaged in sexual intercourse with the victim, while the other indictment alleged that the defendant engaged in fellatio with the victim. The defendant alleged that the two indictments were duplicative because they both charged commission of the same offense. We disagreed and held that "a defendant may be separately indicted for and convicted of proscribed intercourse and fellatio, two separate offenses against the person." *Id.* at 661. Similarly, in the instant case, each indictment alleged that the defendant committed a separate offense against the victim, sexual intercourse and digital penetration. Thus, conviction on both indictments did not result in the defendant receiving multiple punishments for the same offense.

## III. Sufficiency Of The Evidence

■ The defendant next argues that indictment 98-S-383, alleging aggravated felonious sexual assault, should have been dismissed. The indictment charged that the defendant knowingly engaged in a pattern of sexual assault by digitally penetrating the victim's vagina

on three or more occasions. *See* RSA 632-A:2; 632-A:1 (1996) (amended 1998, 1999). The defendant contends: (1) that the evidence does not establish with sufficient certainty that he penetrated the victim's vagina; and (2) that the evidence was not sufficient to prove a pattern of sexual assault by penetration. We disagree.

> Sexual penetration is defined to include any intrusion, however slight, of any part of the actor's body or any object manipulated by the actor into genital or anal openings of the victim's body. In assessing the sufficiency of the evidence presented with respect to penetration, we will view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the State. We will uphold the conviction on the evidence presented if a reasonable jury could have found guilt beyond a reasonable doubt.

*State v. Chamberlain*, 137 N.H. 414, 416 (1993) (quotations, citations and brackets omitted). Here, the evidence was sufficient to permit a reasonable jury to find that the defendant digitally penetrated the victim on at least three occasions. The victim explicitly testified that in: (1) January he "put his hands in my vagina" and he would "put his fingers in me, [and] move his hand around"; (2) in February "he would feel my vagina and put his hands in me"; (3) in March "he'd feel me, my vagina and put his fingers in me"; and (4) in April "he would touch me and feel my vagina, put his fingers in me." The defendant contends that the victim's testimony is "contrived, stated by rote, and memorized" and thus insufficient to convict. The defendant's contention, however, goes to the victim's credibility, which is a question for the jury to decide. *See State v. Surette*, 137 N.H. 20, 22 (1993)(quotation omitted).

■ Further, RSA 632-A:1 defines a "pattern of sexual assault" as "committing more than one act under RSA 632-A:2 or RSA 632-A:3, or both, upon the same victim over a period of 2 months or more and within a period of 5 years." Thus, the victim's testimony that the defendant digitally penetrated her at least three times in a four-month period satisfies the requirements of a pattern of sexual assault. We conclude that the evidence was sufficient to convict the defendant of aggravated felonious sexual assault.

*IV. Time Frame*

■ The defendant argues that the trial court should have dismissed informations 98-S-589, 98-S-593 and 98-S-594, which allege that he gave alcohol to a minor, because the State failed to prove

when these acts occurred. The three informations alleged that the defendant gave the victim's friend beer, wine and vodka between October 1, 1997, and June 19, 1998. Prior to trial, the State amended the dates of the informations to between December 1, 1997, and June 19, 1998. As a general rule, if time is not an element of the offense, "it is sufficient if the State can prove that the events took place on or about the time indicated in the complaint or indictment." *State v. Homo*, 132 N.H. 514, 519 (1989).

While the defendant concedes that time is not an element of the offense of giving alcohol to a minor, he contends that because he raised a defense based upon lack of opportunity, the State must prove that the acts occurred within the time frame alleged in the informations. *See State v. Hennessey*, 142 N.H. 149, 160 (1997).

Here, a review of the record reveals that the State presented evidence demonstrating that the alleged offense occurred within the time frame indicated in the indictment. Specifically, the evidence demonstrated that the victim spent considerable time at the defendant's home from October of 1997 to June 1998. The victim's friend testified that she visited the victim at the defendant's home and stayed overnight on more than five occasions during this period. She further testified that after January of 1998 when she stayed overnight at the defendant's home, he gave her vodka, wine and beer. Additionally, although the defendant now claims that he lacked the opportunity to commit these crimes, he testified that the victim's friend had been at his house "on a couple of occasions" during the relevant time period. Thus, his own trial testimony undermines his claim that he lacked the opportunity to commit these crimes. Accordingly, the trial court did not err in failing to dismiss these three informations.

## V. Obscenity Charge

The defendant next challenges his conviction for exhibiting obscenity, arguing that the State failed to prove that the material was obscene. Information 98-S-595 alleged that the defendant violated RSA 650:2 in that he "did knowingly exhibit or otherwise make available obscene material, pictures of females engaging in sexual intercourse with dogs, to [the victim's friend] . . . and [the victim]." At trial, the State did not present an actual representation of the alleged obscene material. The victim testified that the defendant showed them pictures from the internet that depicted "women having sexual intercourse with animals like dogs and horses." The victim's friend testified that the defendant showed

them pictures of "girls with animals" and of a dog "having sex with the girl."

In reviewing the denial of the defendant's motion to dismiss, "[t]he evidence must be construed most favorably to the State, and the defendant must show that the evidence in its entirety was insufficient to prove he was guilty of the crime charged." *State v. Place*, 128 N.H. 75, 79 (1986) (quotation and brackets omitted).

RSA 650:1,IV (1996) states:

Material is "obscene" if, considered as a whole, to the average person

(a) When applying the contemporary standards of the county within which the obscenity offense was committed, its predominant appeal is to the prurient interest in sex, that is, an interest in lewdness or lascivious thoughts;

(b) It depicts or describes sexual conduct in a manner so explicit as to be patently offensive; and

(c) It lacks serious literary, artistic, political or scientific value.

The defendant contends that the State must produce the pictures in question so that the jury can decide whether or not they are obscene. While we decline to adopt such a broad standard, we hold that in this case, the testimony presented to the jury was insufficient for it to conclude that the pictures were obscene, and thus the court erred in denying the defendant's motion to dismiss this charge. We hold that the State must, through reasonable diligence, attempt to produce the alleged obscene material. *See State v. Hermsdorf*, 135 N.H. 360, 364-65 (1992) (summarizing the burden on the proponent of secondary evidence under the "best evidence rule"). If the State is unable to produce the material and can reasonably explain said failure to the trial court, then testimonial evidence that explicitly describes the material may be sufficient to prove that something is obscene. *See United States v. Villard*, 885 F.2d 117, 125-26 (3d Cir. 1989). In such a situation, the State must lay a proper foundation demonstrating that the witness is qualified to describe with sufficient detail the alleged obscene material. In deciding whether this foundational requirement has been met, the trial court may consider, among other factors, the witness's age, education and life experience.

In this case, however, the State made no preliminary showing under Rule 1004. *See* N.H. R. EV. 1004. Even had it done so in a

manner adequate to persuade the trial court to admit the testimony of the victim and her friend in lieu of the original(s), their testimony was merely a shorthand version of the original evidence. In this case, the testimony was insufficiently descriptive to allow the jury to independently "apply [] the contemporary standards of the county." RSA 650:1, IV (a).

## VI. Curative Instructions

Finally, the defendant argues that the court erred in failing to instruct the jury that he was precluded from presenting any evidence regarding the victim's sexual history. The defendant asserts that such an instruction was warranted after the prosecutor argued in his closing that there was no evidence that any person other than the defendant had sexual intercourse with the victim.

Prior to trial, the State filed a motion *in limine* to exclude any evidence of the victim's sexual history. Although the court did not rule upon this motion, the trial proceeded without the introduction of any such evidence. On appeal, the defendant concedes that the law prohibited him from presenting such evidence.

During closing arguments, defense counsel stated:

> The State called . . . the nurse practitioner . . . and she told you that she did a gynecological examination on this girl a month after — in July of 1998, and — but, the gynecological examination was not inconsistent with what the girl had said; that she'd had sexual intercourse. She also came out and told you that it could've been with her 13-year old boyfriend — the father of a kid at age 13 . . . . [I]t could've been with anybody.

In his closing argument, the prosecutor stated:

> [The victim's] testimony was corroborated by the medical evidence in this case. Now, if they want to throw out that there were boys at the house . . . [the nurse practitioner] testified that what she found in her physical examination of [the victim] was consistent with [her] having had sexual intercourse, and there's only — The defense attorney can sit here and throw out innuendos and anything he wants, but there's no evidence at all before you whatsoever, none, zero, that anybody but this defendant, Dana DeCosta, had sexual intercourse with [the victim].

At this point, defense counsel objected and the court overruled the objection. After the prosecutor completed the closing argument,

defense counsel requested that the court instruct the jury that the defendant was precluded by law from presenting evidence of the victim's sexual history. The court did not give such an instruction.

As the trial court is in the best position to gauge any prejudicial effect the prosecutor's closing remarks may have had on the jury, we review the trial court's decision declining to give an instruction under an abuse of discretion standard. *See State v. Ellison*, 135 N.H. 1, 4 (1991). Here, even assuming that the prosecutor's statement was improper, we cannot say that the trial court abused its discretion by failing to give the requested instruction because the prosecutor's statement was not unfairly prejudicial to the defendant. In response to defense counsel's suggestion that someone else had sexual intercourse with the victim, the prosecutor merely pointed out that there was no evidence before the jury that anyone else had sexual intercourse with the victim.

*Affirmed in part; reversed in part.*

HORTON, J., sat for oral argument but retired prior to the final vote; BRODERICK and NADEAU, JJ., concurred; GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.