Rockingham
No. 2004-455

THE STATE OF NEW HAMPSHIRE

v.

GERARD BEAN

Argued: February 8, 2006
Opinion Issued: April 25, 2006

*Kelly A. Ayotte*, attorney general (*Jeffrey S. Cahill*, senior assistant attorney general, on the brief and orally), for the State.

*Andrew Winters*, assistant appellate defender, of Concord, on the brief, and *Christopher M. Johnson*, chief appellate defender, orally, for the defendant.

HICKS, J. The defendant, Gerard Bean, appeals his conviction, following a jury trial in Superior Court (*Nadeau*, J.), of attempted kidnapping. *See* RSA 629:1 (Supp. 2005); RSA 633:1 (Supp. 2005). We affirm.

The jury could have found the following facts. On the evening of October 13, 2002, the victim, eight–year-old J.L., was at Park Place Lanes, a bowling alley in Windham, with her father, brother, sister, aunt and uncle. While the father bowled, the children were allowed to play right behind him or in the bowling alley's arcade.

The defendant was also at the bowling alley. At times he talked to children in the arcade, tapping them on the shoulder and leaning over to speak to them. One of the children he spoke to was the victim. He told her either that he was her uncle or a friend of her uncle and asked her if she wanted to go play cards. At one point, he asked her to go outside with him,

and although she initially refused, he then said, "Let's go." The defendant stood up and walked out a glass door into the vestibule area of the bowling alley and the victim followed. As the defendant reached the bowling alley's outside door, he was confronted by James Quinn, who had become suspicious upon observing the defendant's interactions with the children in the arcade. Raymond Gosselin, the night manager at the bowling alley, called the police and the defendant was arrested for attempted kidnapping.

On appeal from his conviction, the defendant raises the following claims of error: (1) that the trial court's instructions to the jury impermissibly amended the indictment, which was itself insufficient; (2) that the court improperly permitted the State to refresh the victim's recollection, and admitted hearsay evidence, concerning the defendant's statements to the victim; and (3) that the trial court should have granted the defendant's motion for a directed verdict because there was insufficient evidence to convict. We will address each argument in turn.

The indictment charged in relevant part that on or about October 13, 2002, at Windham, in Rockingham County:

1. Gerard Bean,
2. with the purpose to commit the crime of kidnapping,
3. approached J.L. . . . in the "Park Place Lanes" bowling alley, Bean talked to J.L. and asked J.L. to go outside with him, Bean also said words to the effect of "Let's go" to J.L., Bean began to exit "Park Place Lanes" with J.L. following behind him,
4. which, under the circumstances as he believed them to be, constituted a substantial step toward the commission of the crime.

The defendant moved to dismiss the indictment as insufficient because it failed to specify which statutory variant of kidnapping the defendant allegedly attempted to commit. Specifically, RSA 633:1 defines a number of ways in which the crime of kidnapping may be committed:

> I. A person is guilty of kidnapping if he knowingly confines another under his control with a purpose to:
>
> (a) Hold him for ransom or as a hostage; or
> (b) Avoid apprehension by a law enforcement official; or
> (c) Terrorize him or some other person; or
> (d) Commit an offense against him.
>
> I-a. A person is guilty of kidnapping if the person knowingly takes, entices away, detains, or conceals any child under the age

of 18 and unrelated to the person by consanguinity, or causes such child to be taken, enticed away, detained, or concealed, with the intent to detain or conceal such child from a parent, guardian, or other person having lawful physical custody of such child.

The court denied the motion and instructed the jury on two of the variants in section I—purpose to terrorize the victim and purpose to commit an offense against the victim—and the variant in section I-a. The court further instructed the jury that they must unanimously agree upon which variant the defendant took a substantial step toward committing.

■ The defendant contends that these instructions impermissibly amended the indictment.

An impermissible amendment would be one that effects a change in the offense charged, or adds an offense. Because an element of the offense charged is automatically considered part of the substance of an indictment, instructing the jury on an element not charged by the grand jury substantively changes the offense and therefore is grounds for automatic reversal.

*State v. Glanville*, 145 N.H. 631, 633 (2000) (quotation omitted). The defendant argues that here, as in *Glanville*, the trial court's instructions on statutory variants that were not alleged in the indictment "supplied what was otherwise a legal insufficiency to the indictment." *Id.* at 634 (quotation omitted). We disagree.

In *State v. Johnson*, 144 N.H. 175, 178 (1999), we noted that "[t]he attempt statute requires the State to identify the intended offense, but does not require the State to plead and prove the elements of the intended offense." In *Johnson*, the defendant was convicted of attempted aggravated felonious sexual assault. *Id.* at 176. On appeal, he argued that the indictment failed to allege the elements of the charged offense because, among other things, it failed "to allege the circumstances under which penetration would have been accomplished by identifying the appropriate subsection or subsections of RSA 632-A:2, I." *Id.* at 177. We disagreed, reasoning that "[s]ince an attempted crime is by definition a crime not completed, the State could not plead, factually identify, and prove the elements of the intended offense as if it had been carried out." *Id.* at 178. We therefore held that the State was not required to allege in the indictment a statutory subsection of the attempted offense. *Id.*

The defendant acknowledges *Johnson*, but argues that this case is more like *Glanville*, which, he asserts, "seems to at least partly conflict" with *Johnson*. In *Glanville*, the defendant was charged with attempted armed robbery. *See* RSA 636:1 (1996). The indictment alleged, in part, that the

defendant was armed with a BB gun, "which reasonably appeared to be a deadly weapon." *Glanville*, 145 N.H. at 632 (quotation omitted). It was "undisputed that the State intended for the indictment to charge the defendant with [the attempt of] a violation of paragraph (b) of RSA 636:1, III." *Id.* at 634. Paragraph (b) of the statute, however, required that the defendant "[r]easonably appeared *to the victim* to be armed with a deadly weapon." RSA 636:1, III(b) (emphasis added). We determined that the words "to the victim" were essential to paragraph (b) and therefore held that when the court instructed the jury that it could find the defendant guilty if it found that he had the specific intent to use an instrumentality which would reasonably appear *to the victim* to be a deadly weapon, it impermissibly amended the indictment. *Glanville*, 145 N.H. at 634.

■ The defendant argues that "[i]f this Court fails to reconcile *Glanville* with *Johnson*, it should find that [*Glanville*] significantly modifies *Johnson*, or overrules it altogether." Because we find this case readily distinguishable from *Glanville*, we need not consider the defendant's invitation to reexamine *Johnson*. In *Glanville*, the State, although not required to do so under *Johnson*, attempted to charge the defendant with a specific variant of the crime allegedly attempted, but failed to accurately set forth that variant in the indictment. In this case, the State made no attempt to specify a variant of the underlying crime of kidnapping in the attempt indictment, as it was entitled to do under *Johnson*. Thus, because the indictment was sufficient, *see Johnson*, 144 N.H. at 179, the trial court's instructions did not "suppl[y] what was otherwise a legal insufficiency to the indictment," *Glanville*, 145 N.H. at 634 (quotation omitted).

The defendant next argues that the trial court erred in permitting the State to refresh the victim's recollection about the defendant's statements to her. During the victim's direct testimony, the prosecutor asked if the defendant had "suggest[ed] at any time that he might be somebody." The victim stated that she did not remember. The prosecutor then confirmed that the victim could read and had her read to herself a portion of her testimony from a prior trial of this case that had ended in a mistrial. The prosecutor then asked, "Now, after reading that, does that help you to remember?" The victim said, "Yes." She then testified that the defendant "said something about friends of my uncle's."

■ The defendant argues that the State failed to lay a proper foundation for allowing the victim to refresh her recollection because "she was never asked, and never testified, that reading the transcript would actually refresh her recollection." The defendant, however, failed to object on this specific ground. Rather, he objected generally that "the witness has to

testify as to what she remembers." After the prosecutor clarified for the court that he intended to refresh the victim's recollection, and the court stated, "That's fine," defense counsel merely asked the court to note his objection. Counsel never raised a specific objection as to foundation. Accordingly, this issue has not been preserved for appellate review. *See State v. Brinkman*, 136 N.H. 716, 718 (1993).

The defendant next challenges the admission of hearsay in the following instances. First, Marylene Ruiz spoke to the victim after the incident. At trial, Ruiz testified that she asked the victim "if she knew who the guy was that brought her outside." When asked if the victim responded, Ruiz testified that the victim "said it was her uncle." Second, Alberto Ruiz, Marylene's husband, testified that he overheard the victim tell his wife "that a particular individual said that he was her uncle." And third, Detective Ed Fedele of the Windham Police Department, who interviewed the victim at the scene of the incident, testified that the victim told him the man she described asked her to go outside with him, she said no, and the man said, "Let's go."

Hearsay statements are not admissible unless they fall under an exception to the hearsay rule. *State v. Gordon*, 148 N.H. 710, 719 (2002). "We will not reverse a trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion." *Id.*

The trial court admitted the challenged statements under the excited utterance exception to the hearsay rule. *See* N.H. R. Ev. 803(2). This exception applies to "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*

The defendant does not dispute that the victim was "nervous and under stress" when she made the statements at issue. He argues, however, that the victim's "nervousness and stress were not caused by what [the defendant] had said to her, but by the repeated questioning by adults. Therefore, her statements did not relate to the startling event, and were not excited utterances."

The State first contends that the defendant waived his challenge to the admission of this evidence by failing to address the excited utterance exception in his initial brief. The defendant does, however, address the issue in his reply brief. We will assume, without deciding, that the issue is not waived.

▮ The defendant's argument appears to be that because the startling event was not the crime itself, the victim's statements about the crime cannot be excited utterances. We disagree. First, there is no requirement that the crime be the startling event. As stated in *Esser v. Commonwealth*,

566 S.E.2d 876, 879 (Va. Ct. App. 2002): "The basis of the excited utterance exception rests with the spontaneity and impulsiveness of the statement; thus, the startling event does not have to be the actual crime itself, but rather may be a related occurrence that causes such a reaction." Moreover, while the test for the excited utterance exception "requires the statement to be related to the startling event, it may also relate to the circumstances surrounding the event. The requirement that the statements must relate to the startling event has been liberally interpreted." *Bondurant v. State*, 956 S.W.2d 762, 766 (Tex. App. 1997). Thus, "the fact that portions of the spontaneous utterance relate to an event prior to the startling event does not make those portions of the utterance inadmissible." *Id.* Accordingly, even assuming that the questioning of the victim was the startling event, the defendant's prior attempts to kidnap her were sufficiently related to that startling event to make her statements excited utterances.

■ Finally, the defendant argues that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to convict him. "In an appeal of the denial of a motion for a directed verdict based on sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt." *State v. Surette,.* 137 N.H. 20, 22 (1993) (quotation omitted). To convict the defendant of attempted kidnapping, the jury was required to find that with the purpose that the crime of kidnapping be committed, the defendant did or omitted to do "anything which, under the circumstances as he believe[d] them to be, is an act or omission constituting a substantial step toward the commission of the crime" of kidnapping. RSA 629:1, I; *see also State v. Meaney*, 129 N.H. 448, 450 (1987).

With respect to the variant of kidnapping set forth in RSA 633:1, I-a, the defendant argues:

> There were no statements or writings by Bean that he intended to confine or conceal a child. Based on the evidence presented, it was just as likely that Bean was a man of child-like intelligence seeking a friend, or that he spoke with [the victim] innocuously, and she got confused and thought she was supposed to follow him. There was substantial, reasonable doubt that he attempted to confine [the victim], or conceal her from her parent.

Similarly, with respect to the variant set forth in RSA 633:1, I, the defendant argues that the prosecutor "implied that Bean had a generally malevolent intent, but did not specifically indicate what Bean intended to

do to [the victim]. Thus, the jury was encouraged to speculate as to the worst instead of giving Bean the benefit of every reasonable doubt."

We note that "[t]he jury was free to reject [any] inferences urged by the defendant." *Meaney*, 129 N.H. at 451. Moreover, "[c]onduct illuminates intent." *Id.* (quotation omitted). Our review of the record reveals ample evidence from which the jury could conclude that the defendant had the purpose to commit the crime of kidnapping. In addition to the evidence referred to earlier in this opinion, the jury heard testimony about statements made by the defendant that point to his own consciousness of guilt. *Cf. State v. Stott*, 149 N.H. 170, 172-73 (2003) (upholding admission of defendant's statements to police that were probative of his consciousness of guilt). For instance, when Quinn confronted the defendant in the vestibule of the bowling alley, he asked, "What are you doin'?" The defendant answered, "I didn't know she was followin' me," even though Quinn did not "specifically ask him what he was doing with the child." Similarly, at various times the defendant praised the police officer and the bowlers who were questioning him for doing a good job because there were a lot of "sickos," "weirdos" or "crazy people" out there. The defendant also denied talking to the victim and told Fedele that he would "never be convicted of this" because "[s]he's not a credible—she's not credible."

In addition, the defendant offered varying explanations for his presence at the bowling alley that night. He first said that his daughter was bowling there, then that he was evaluating the place because his daughter or daughter-in-law wanted to bowl there, and finally that his car had overheated and he was waiting for it to cool down. Also, when asked by Fedele where he had been that evening and how he arrived at the bowling alley, the defendant stated that he was coming from his friend Al's house. Upon further questioning, however, he said he could not remember Al's last name and did not know his telephone number. The defendant later stated that Al's name was really Tim and that he "either lived in Methuen or the Haverhill area, but he wasn't quite sure," although he could show the detective "exactly where Tim lived" if he drove him there. The jury could have found these inconsistent and evasive answers further evidence of the defendant's consciousness of guilt. *Cf. State v. Thorp*, 86 N.H. 501, 507 (1934) ("A falsehood uttered to avoid suspicion is relevant to show consciousness of guilt."). We conclude that the evidence was sufficient to support a finding of guilt.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.