Merrimack
No. 2006-418

THE STATE OF NEW HAMPSHIRE

v.

DANIEL KING

Argued: June 14, 2007
Opinion Issued: October 30, 2007

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*James T. Brooks*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Daniel King, appeals a decision of the Superior Court (*Smukler*, J.) denying his motion to suppress the victim's in-court identifications. We affirm.

The record supports the following facts. Between 7:00 and 7:30 p.m. on October 11, 2003, fifteen-year-old K.C. was working at the Dunkin' Donuts drive-through window on Loudon Road in Concord. A man ordered a large coffee. When K.C. approached the window, she noticed that the man's genitals were exposed. K.C. turned around to put money in the register and turned back towards the man to give him his coffee. She again noticed that the man's genitals were exposed. K.C. informed her supervisor, Derrick Williams, of what she had seen and he advised her to write down the man's license plate number. She leaned out the window, saw a car parked in front of a trashcan and wrote down the plate number. Williams contacted the police and Sergeant Ranee Boyd arrived shortly thereafter. K.C. provided Sergeant Boyd with a description of the man and his license plate number. The number was registered to a Ford Taurus wagon owned by the defendant. Loudon Police Corporal Barrett Moulton spoke with the defendant at his residence that night. The defendant denied driving into Concord that day.

On October 16, 2003, Concord Police Detective John Thomas met with K.C. at her school and showed her a photo array containing eight black and white pictures. Although K.C. was unable to positively identify a suspect, she narrowed her choices to two suspects, one of whom is the defendant. K.C. expressed her uncertainty in further narrowing her choice, but ultimately selected the photograph of the other suspect.

Concord Police Detective Todd Flanagan later interviewed the defendant at his workplace, at which time he admitted being at Dunkin' Donuts on October 11, 2003, but claimed that he merely turned around in the parking lot. When the detective questioned whether he could have accidentally exposed his genitals when he went through the drive-through, the defendant acknowledged that he might have done so accidentally.

On May 7, 2004, K.C. attended the defendant's trial for indecent exposure in Concord District Court. She was sitting in the gallery when the defendant entered the courtroom. According to K.C., when she saw the defendant at the court, she had "a flashback to the night of Dunkin Donuts and it just clicked that that was the man." During her trial testimony in the district court, she identified the defendant as the man who had exposed himself to her. The defendant was convicted in the district court and he appealed to the superior court for a *de novo* trial.

Prior to the trial, the defendant filed a motion to suppress K.C.'s district court identification and prevent her from testifying. The defendant argued that since K.C. failed to identify the defendant from the photo array, any

in-court identification of the defendant was impermissibly suggestive and unreliable under the due process analysis set forth in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). The court held that K.C.'s identification was not unnecessarily suggestive because the court proceedings were necessary to the trial and the defendant "had a constitutional right to be confronted by his accuser . . . and in fact his rights would have been compromised had he not been confronted by his accuser."

K.C. testified at the trial *de novo* and again identified the defendant as the man who had exposed himself to her. The jury found the defendant guilty.

On appeal, the defendant argues, citing Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment to the United States Constitution, that the admission of K.C.'s identifications of him violated his due process rights. We first address the defendant's claims under our State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231, 233 (1983).

In general, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." *Biggers*, 409 U.S. at 198. The defendant contends that "the conditions surrounding K.C.'s identification of him at Concord District Court were unnecessarily suggestive, rendering [that] identification, as well as any future identification, unreliable." The district court identification raises two questions: first, whether it was unnecessarily suggestive on its own; and second, whether it was tainted by the prior photo array.

The defendant first challenges the conditions of the district court identification itself. He asserts that "[w]hat occurred there was a one-man showup":

> When K.C. arrived at the Concord District Court, she knew what the proceeding was about, and she fully-expected [*sic*] to see the perpetrator. Aside from people directly involved in [the defendant's] case, the courtroom was empty. While K.C. sat in the courtroom, she observed a sheriff bring [the defendant] into the courtroom. She saw that [the defendant] was wearing a prison jumpsuit, and she saw him escorted to the defendant's table.

(Citations omitted.)

The defendant also contends that the propriety of the district court identification should be analyzed under the two-step analysis "commonly referred to as the *'Biggers'* test." *See Biggers*, 409 U.S. 188. We described the two-step analysis as follows in *State v. LaRose*, 127 N.H. 146 (1985):

> Initially, we inquire into whether the identification procedure was impermissibly or unnecessarily suggestive. At this stage of the inquiry, the defendant has the burden of proof. Only if the defendant has met his burden must we then consider the factors enumerated in *Neil v. Biggers* ... to determine whether the identification procedure was so suggestive as to render the identification unreliable and, hence, inadmissible. At this stage of the inquiry, the State bears the burden.

*LaRose,* 146 N.H. at 150 (citations omitted); *see Biggers,* 409 U.S. at 199-200 (listing, among the "factors to be considered in evaluating the likelihood of misidentification," the witness' opportunity "to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation").

As we noted in *LaRose,* this test is used to determine "the admissibility of an *out-of-court* identification." *LaRose,* 127 N.H. at 150 (emphasis added). We have also noted that if an out-of-court identification is found inadmissible under this test, a subsequent in-court identification will also be inadmissible, *id.,* unless it "did not result from the earlier confrontation ... but was independent thereof." *State v. Ober,* 116 N.H. 381, 383 (1976). We have not yet, however, explicitly considered whether this two-step analysis applies to a strictly in-court identification not preceded by an impermissibly suggestive pre-trial confrontation. *Cf. id.* at 383-84 (applying *Biggers* factors to determine whether witness had grounds to identify defendant independent of challenged procedure at the outset of trial in which defendant was asked by the court clerk to stand).

Other courts have noted that *Biggers* and the line of United States Supreme Court cases preceding it dealt with the exclusion of impermissible pretrial identifications and the in-court identifications that follow them. *See, e.g., United States v. Domina,* 784 F.2d 1361, 1368 (9th Cir. 1986), *cert. denied,* 479 U.S. 1038 (1987). "None of these cases has set any guidelines for in-court identification procedures nor indicated that in-court identification must be made in a way that is not suggestive." *Id.* Accordingly, "the majority of courts have [concluded] that *Neil v. Biggers* does not apply to in-court identifications." *State v. Lewis,* 609 S.E.2d 515, 518 (S.C. 2005). *But see United States v. Hill,* 967 F.2d 226, 232 (6th Cir.) (holding "that the *Biggers* analysis applies to ... in-court identifications for the same reasons that the analysis applies to impermissibly suggestive pre-trial identifications"), *cert. denied,* 506 U.S. 964 (1992).

The court in *Domina* explained the differences between initial pretrial and in-court identifications that justify different treatment in determining their admissibility:

> The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. Because the [fact finder is] not present to observe the pretrial identification, [the fact finder is] not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's statements, are not available to the [fact finder] during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially.
>
> When the initial identification is in court, . . . [t]he [fact finder] can observe the witness during the identification process and is able to evaluate the reliability of the initial identification.

*Domina*, 784 F.2d at 1368 (citation omitted).

In addition to affording the fact finder the opportunity to observe and assess the identification itself, an initial in-court identification is subject to immediate challenge through cross-examination. *See Baker v. Hocker*, 496 F.2d 615, 617 (9th Cir. 1974). "Where a witness first identifies the defendant at trial, defense counsel may test the perceptions, memory and bias of the witness, contemporaneously exposing weaknesses and adding perspective in order to lessen the hazards of undue weight or mistake." *People v. Rodriguez*, 480 N.E.2d 1147, 1151 (Ill. App. Ct. 1985), *cert. denied*, 475 U.S. 1089 (1986). Counsel can also "argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to . . . any suggestibility in the identification procedure." *Manson v. Brathwaite*, 432 U.S. 98, 113-14 n. 14 (1977) (quotation omitted).

This reasoning comports with our treatment of in-court identifications in prior cases. In *Ober*, we concluded that it was not "intolerably prejudicial" for an identification witness to be made cognizant of the defendant's identity prior to testifying. *Ober*, 116 N.H. at 384. We noted that "[i]n terms of fairness there has been no abuse. Not only is counsel present, but the jury has full opportunity to view the circumstances and assess

evidentiary worth." *Id.* (quotation and ellipsis omitted). Similarly, in *State v. Cross*, 128 N.H. 732 (1986), we contrasted an in-court identification untainted by improper pretrial procedure with one allegedly so tainted. We noted:

> [T]here was adequate opportunity at trial to address the serious issue of the soundness of the identifications. Because the sources of concern were clearly brought out through cross-examination and subjected to the jury's scrutiny, the case is unlike the classic instances in which pretrial procedure effectively bars the defendant from any opportunity for effective cross-examination to demonstrate a causal connection between undue police suggestiveness and final witness identification.

*Cross*, 128 N.H. at 735.

█ Based upon the different considerations involved in pretrial and in-court identifications, we join the apparent majority of courts in concluding "that *Neil v. Biggers* does not apply to in-court identifications and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument." *Lewis*, 609 S.E.2d at 518. The inherent suggestiveness in the normal trial procedure employed here does not rise to the level of constitutional concern. Rather, as stated by the court in *State v. Smith*, 512 A.2d 189, 193 (Conn. 1986), "[t]he manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court." *See also United States v. Bennett*, 675 F.2d 596, 598 (4th Cir.) (noting that propriety of in-court identification procedure is determined in the exercise of trial court's discretion), *cert. denied*, 456 U.S. 1011 (1982).

█ Similar precedent answers the defendant's contention that the district court identification was inadmissible because the State could have arranged a pretrial corporeal lineup. "[T]here is no constitutional entitlement to an in-court line-up or other particular methods of lessening the suggestiveness of in-court identification, such as seating the defendant elsewhere in the room. These are matters within the discretion of the court." *United States v. Curtis*, 344 F.3d 1057, 1063 (10th Cir. 2003) (quotation omitted), *cert. denied*, 540 U.S. 1157 (2004); *see also Cross*, 128 N.H. at 735 (noting that court, in its discretion, could have ordered a line-up, but "it does not follow from these possibilities for better procedures that the actual identifications were unreliable to the point of inadmissibility"). "A defendant simply does not have the right to a lineup, whether conducted before or during trial." *Maxwell v. State*, 10 S.W.3d 785, 787 (Tex. Ct. App. 2000).

We now consider whether the district court identification was tainted by the prior photographic array. We note that the defendant makes no claim that the photographic array was itself improper. In fact, "[g]iven that [the witness] was unable to select Defendant from the [photographic array], the Court will presume that the pretrial identification procedure was not so impermissibly suggestive as to cause the substantial likelihood of misidentification." *United States v. Beeler*, 62 F. Supp. 2d 136, 141 (D. Me. 1999).

■ As the photographic array was not unduly suggestive, we again conclude that the *Biggers* analysis does not apply. In addition, in accordance with our discussion above, the general rule is that absent an unduly suggestive pretrial identification procedure, "questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994), *superseded by statute on other grounds.*

■ The defendant relies upon *Beeler* and *United States v. Emanuele*, 51 F.3d 1123 (3d Cir.1995), which held that an in-court identification by a witness who did not make a prior positive identification "would be impermissibly suggestive in and of itself." *Beeler*, 62 F. Supp. 2d at 141; *see Emanuele*, 51 F.3d at 1127, 1130. With due respect to the *Beeler* and *Emanuele* courts, we are not persuaded by their analyses and are not bound by their decisions. Instead, we agree with the courts holding that "a witness's prior inability to identify a defendant goes to the credibility of the in-court identification and not to its admissibility, and thus raises a proper question of fact for the jury to determine." *United States v. Briggs*, 700 F.2d 408, 413 (7th Cir.), *cert. denied*, 461 U.S. 947, and *cert. denied*, 462 U.S. 1110 (1983); *see also Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.), *cert. denied*, 516 U.S. 1017 (1995).

■ Having found that the district court identification need not be excluded, either on its own or as a result of the inconclusive photographic array, we conclude that the superior court identification was properly admitted. Under the reasoning outlined above, the *Biggers* analysis does not apply because the district court identification, even if considered a pretrial procedure, was not improper. In addition, because it was not improper, the district court identification did not taint the subsequent identification in superior court.

In the alternative, if we applied the *Biggers* analysis, we would conclude that the district court identification was not unnecessarily suggestive for the reasons stated above. Thus, we would not need to apply the *Biggers* reliability factors, and would again reach the conclusion that the superior

court identification was admissible. *See LaRose*, 127 N.H. at 151 (noting that where defendant had not met his burden of showing that the out-of-court identifications were impermissibly suggestive, it was not necessary to reach the second step of the analysis).

We reach the same result, based upon the same analysis, under the Federal Constitution. *See Domina*, 784 F.2d at 1368; *Briggs*, 700 F.2d at 413. Accordingly, we find no error in the trial court court's denial of the defendant's motion to suppress.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.