NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2013-136


THE STATE OF NEW HAMPSHIRE

v.

JAMES PERRY

Argued: March 6, 2014
Opinion Issued: September 12, 2014


Joseph A. Foster, attorney general (Geoffrey W.R. Ward, assistant attorney general, on the brief and orally), for the State.


Stephanie Hausman, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


HICKS, J. The defendant, James Perry, appeals his conviction, following a jury trial in Superior Court (Delker, J.), of attempted kidnapping. See RSA 629:1 (2007); RSA 633:1, I (2007). We affirm in part, vacate in part, and remand.

The defendant was indicted on one count of attempted kidnapping and one count of criminal restraint arising out of a single course of conduct occurring on or about December 14, 2011. The attempted kidnapping indictment alleged that on or about that date, the defendant,

acting with a purpose that the crime of Kidnapping be committed, . . . approached [the victim] while she was standing at her driver side door and displayed a weapon while telling her to get back in her car, told her to unlock her rear door and then dove across [her] lap while she was seated in the driver seat when she failed to unlock the rear door, . . . which under the circumstances as he believed them to be constituted a substantial [step] toward the commission of said crime . . . .

The jury convicted the defendant on both counts, but, because the offenses arose out of the same uninterrupted course of conduct, the trial court sentenced the defendant only on the attempted kidnapping conviction, while holding the criminal restraint conviction in abeyance pending the outcome of any appeal.

On appeal, the defendant argues that the trial court erred by: (1) admitting the victim's in-court identification of the defendant when she had not made a prior out-of-court identification; and (2) sentencing him for a class A felony when the indictment failed to allege, and the jury was not instructed to find, a fact necessary for that level offense; namely, that he did not "voluntarily release[] the victim without serious bodily injury and in a safe place prior to trial." RSA 633:1, II (2007). We will address each argument in turn.

"On appeal from a motion to suppress identification evidence, we will not overturn the trial court's ruling unless, after reviewing the record, we conclude that it is contrary to the weight of the evidence." State v. Perri, 164 N.H. 400, 404 (2012). Just prior to the start of trial, counsel for the State and for the defendant advised the court of an issue that might arise during the proceedings. Specifically, although the State had not initially planned to ask the victim to identify the perpetrator of the crime, the prosecutor stated that she might attempt an identification if she got "some sort of sense" from the victim during her testimony that she would be able to identify the defendant. The defendant's counsel objected, noting that there had never been an out-of-court identification, and counsel agreed that if the State should decide to seek an identification from the victim, they would approach the bench at that time to address the defendant's objection.

At that subsequent sidebar conference, counsel for the defendant argued that an in-court identification would be "unconstitutionally suggestive" and inadmissible under the analysis of Neil v. Biggers, 409 U.S. 188 (1972). The trial court found the Biggers analysis inapplicable according to our holding in State v. King, 156 N.H. 371 (2007), and allowed the in-court identification.

On appeal, the defendant argues that King is distinguishable. First, he notes the witness in King was presented, prior to trial, with a photo array from which she could not identify the defendant. See King, 156 N.H. at 372. Thus,

2

the defendant argues, the State had attempted a nonsuggestive identification prior to trial in King, while "[h]ere, the State made no effort to secure a nonsuggestive identification . . . and offered no explanation for its decision not to create a line-up that included [his] photo." Second, the defendant asserts that because "King was aware, prior to trial, that the State would be seeking an in-court identification . . . , he was able to file a pretrial motion to exclude the identification" and could have taken other pretrial measures. See King, 156 N.H. at 372. The defendant contends that here, by contrast, "the State advised [him] prior to trial that it did not intend to ask [the victim] to identify him" and, therefore, he did not mount a pretrial challenge to an in-court identification. He contends that "[i]t was only after [the victim] began her testimony, and the opportunity to arrange a less suggestive method of identification had passed, that the State decided to elicit an in-court identification."

The State counters that the defendant waived these arguments by failing to raise them before the trial court and that they are not, in any event, supported by the record. Assuming without deciding that the defendant's arguments are preserved, we reject them. The short answer to the defendant's first argument, based upon the State's failure to procure a nonsuggestive pretrial identification or explain why it had not done so, is that "[a] defendant simply does not have the right to a lineup, whether conducted before or during trial." King, 156 N.H. at 376 (quotation omitted). Thus, in King, we rejected "the defendant's contention that the district court identification was inadmissible because the State could have arranged a pretrial corporeal lineup." Id. We similarly reject the defendant's contention here that King is inapposite because the State could have, but did not, arrange a nonsuggestive pretrial identification.

The defendant's second basis for distinguishing King is countered by the State's correct observation that "to the degree the defendant's argument on appeal relies on his representation that the State was absolute in advising the defense that it did not intend to ask [the victim] to identify the defendant, the argument misstates the record." As factual support for his argument, the defendant cites the transcript of the pretrial exchange in which counsel for both parties informed the trial judge of the identification issue that might come up at trial. We agree with the State that its "equivocal statement" that it was not planning to seek an in-court identification unless the prosecutor got "some sort of sense" from the victim that she could make an identification, does not support a conclusion that the defendant was misled or precluded from challenging an identification prior to trial. We note that the defendant did not raise a claim of unfair surprise at that pretrial conference; rather, his counsel merely expressed that the "State ha[d] indicated to [him] that they — they're not necessarily — that is not their strategy at this point," and that if the State decided to attempt an identification, "then we'll approach Your Honor beforehand and then we can address those issues at that time." Accordingly,

we do not find the defendant's attempts to factually distinguish <u>King</u> on these bases persuasive, and we conclude that <u>King</u> is controlling.

In <u>King</u>, we addressed whether the "two-step [<u>Biggers</u>] analysis applies to a strictly in-court identification not preceded by an impermissibly suggestive [pretrial] confrontation." <u>Id</u>. at 374. "Based upon the different considerations involved in pretrial and in-court identifications, we join[ed] the apparent majority of courts in concluding that <u>Neil v. Biggers</u> does not apply to in-court identifications and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument." <u>Id</u>. at 376 (quotation omitted). We concluded that "[t]he inherent suggestiveness in the normal trial procedure" — which the defendant in <u>King</u> characterized as a one-man showup — "does not rise to the level of constitutional concern." <u>Id</u>. at 376. Accordingly, consistent with <u>King</u>, the trial court did not err in admitting the in-court identification without first testing its reliability under the <u>Biggers</u> factors.

In the alternative, the defendant urges us to "overrule <u>King</u> and apply the <u>Biggers</u> factors when the State seeks to elicit a witness's first identification in-court." "We do not lightly overrule a prior opinion." <u>State v. Duran</u>, 158 N.H. 146, 153 (2008). "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." <u>State v. Quintero</u>, 162 N.H. 526, 532 (2011) (quotation omitted). "Thus, when asked to reconsider a holding, the question is not whether we would decide the issue differently <u>de</u> <u>novo</u>, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." <u>Duran</u>, 158 N.H. at 153 (quotation omitted). In determining whether a holding has come to be seen as such an error, several factors inform our judgment, including:

> (1) whether the rule has proven to be intolerable simply in defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

<u>Id</u>. at 153-54. "[N]o single factor is wholly determinative because the doctrine of stare decisis is not one to be either rigidly applied or blindly followed." <u>Quintero</u>, 162 N.H. at 533 (quotations and citation omitted).

The defendant argues that <u>King</u> should be overruled "in light of the legal developments surrounding identification evidence." He notes that we

4

considered the opinions of other courts in <u>King</u>, but counters that "many courts have held that <u>Biggers</u> applies to in-court identifications" and asserts that, "[o]f the federal circuit courts and state supreme courts that appear to have considered the issue, fewer support the <u>King</u> position." Twelve of the fourteen cases he cites in support of applying <u>Biggers</u>, however, predate our decision in <u>King</u>, one of which we cited in <u>King</u> but declined to follow because we were "not persuaded by" its analysis. <u>King</u>, 156 N.H. at 377.

The defendant also cites <u>Perry v. New Hampshire</u>, 132 S. Ct. 716 (2012), concluding that while it "narrows the scope of the due process concern about identification evidence," it "does not directly address the question presented here." In <u>Perry</u>, the United States Supreme Court rejected the contention that its identification decisions "support[] a rule requiring trial judges to prescreen eyewitness evidence for reliability any time an identification is made under suggestive circumstances." <u>Perry</u>, 132 S. Ct. at 725. It held that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances <u>arranged by law enforcement</u>." <u>Id</u>. at 730 (emphasis added). "The fallibility of eyewitness evidence does not, <u>without the taint of improper state conduct</u>, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." <u>Id</u>. at 728 (emphasis added); <u>see</u> <u>also</u> <u>State v. Addison</u>, 160 N.H. 792, 801-02 (2010) (holding that the <u>Biggers</u> analysis does not apply to either in-court or out-of-court identification in the absence of improper state action). We read <u>Perry</u> as confirming our conclusion in <u>King</u> that "[t]he inherent suggestiveness in . . . normal trial procedure . . . does not rise to the level of constitutional concern," <u>King</u>, 156 N.H. at 376, particularly given the <u>Perry</u> Court's acknowledgement that "[m]ost eyewitness identifications" — and "[i]ndeed, all in-court identifications" — "involve some element of suggestion." <u>Perry</u>, 132 S. Ct. at 727.

We conclude that the defendant has failed to demonstrate that our decision in <u>King</u> "is no more than a remnant of abandoned doctrine," <u>State v. Holmes</u>, 154 N.H. 723, 729 (2007) (quotation omitted), and we therefore decline to overrule it. As we noted above, <u>King</u> controls this case and, accordingly, we conclude that the trial court did not err in admitting the in-court identification.

The defendant next contends that the trial court erred in sentencing him for a class A felony offense when the indictment did not allege, and the jury did not find, facts sufficient to elevate the offense from a class B to a class A felony. Resolution of this issue requires us to engage in statutory interpretation. <u>Cf</u>. <u>State v. Mohamed</u>, 159 N.H. 559, 560 (2009).

> We review the trial court's statutory interpretation <u>de</u> <u>novo</u>. In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute

considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Further, we interpret a statute in the context of the overall scheme and not in isolation. We do not consider legislative history to construe a statute that is clear on its face.

State v. Hayden, 158 N.H. 597, 599 (2009) (quotation omitted).

The kidnapping statute provides, in relevant part:

I. A person is guilty of kidnapping if he knowingly confines another under his control with a purpose to:

(a) Hold him for ransom or as a hostage; or

(b) Avoid apprehension by a law enforcement official; or

(c) Terrorize him or some other person; or

(d) Commit an offense against him.

. . . .

II. Kidnapping is a class A felony unless the actor voluntarily releases the victim without serious bodily injury and in a safe place prior to trial, in which case it is a class B felony.

RSA 633:1 (2007). The defendant asserts that our cases treat the "voluntarily releases . . . without serious bodily injury," id., factor as "an element that must be proven by the State and found by the jury beyond a reasonable doubt before a defendant may be sentenced for a class A felony." See State v. LaRose, 127 N.H. 146, 154 (1985) (holding that "[a] defendant is guilty of the class A felony of kidnapping only if the jury finds that the evidence establishes both the class B felony of kidnapping as defined in RSA 633:1, I, and the elements of a class A felony set forth in RSA 633:1, II"); State v. Goodwin, 118 N.H. 862, 869 (1978) (concluding that "whether a [kidnapping and] rape victim has suffered serious physical or psychological injury [so as to make the accompanying kidnapping offense a class A felony] must be presented to the jury as would evidence of any other element of the crime"). We acknowledge this, but offer no opinion on the continued vitality of this line of cases. The defendant argues, in light of this precedent, that the trial court "erred in treating the [voluntary release] element as a mitigating factor that a defendant had to prove."

6

The defendant misstates the trial court's ruling. The court reasoned:

> [R]eading Paragraph [II] of the kidnapping statute, the way this is structured is it begins with the presumption that all kidnapping is a Class A felony. And it does not require the defendant's intent at the beginning of the kidnapping to be — to release the victim voluntarily, without serious bodily injury; rather, at the beginning of the kidnapping, the defendant may very well have intended to keep, confine the victim indefinitely or to inflict serious bodily injury. And at some point during the course of the kidnapping, if the defendant gets cold feet and/or has a change of heart and releases the victim without serious bodily injury, that's a mitigating factor that can reduce the offense from an A to a B, in the context of a completed kidnapping.
>
> But in an attempted kidnapping, once the State has proven that the defendant has committed the elements in Paragraph [I], the defendant has committed a class A felony, and that there is no opportunity in that context to demonstrate the — the mitigating factors, because this is not a completed crime. The completed crime was a Class A felony.

Thus, while the court referred to voluntary release as a "mitigating factor," it did not place the burden of proof on the defendant. Rather, it ruled that that factor or element — which the State conceded it had the burden to disprove in the context of a completed kidnapping — was not necessary in the context of an attempted kidnapping; in other words, it ruled that "the State does not need to allege and prove in an attempted kidnapping the act — the element of voluntarily releasing the victim without serious bodily injury." We agree.

"Attempt is an inchoate crime that is considered a substantive offense in and of itself." State v. Johnson, 144 N.H. 175, 178 (1999) (citation omitted). The attempt statute provides, in relevant part:

> I. A person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime.

RSA 629:1, I. With the exception of attempted murder, "[t]he penalty for attempt is the same as that authorized for the crime that was attempted." RSA 629:1, IV (2007).

"An indictment charging an attempt must allege both an intent to commit a crime and an overt act in furtherance of the crime." Johnson, 144

N.H. at 178 (quotation and brackets omitted).  "The attempt statute requires the State to identify the intended offense but does not require the State to plead and prove the elements of the intended offense."  State v. Casanova, 164 N.H. 563, 565 (2013).  "Since an attempted crime is by definition a crime not completed, the State could not plead, factually identify, and prove the elements of the intended offense as if it had been carried out."  Johnson, 144 N.H. at 178.  Thus, even if the absence of voluntary release is an element of a class A felony level kidnapping — the intended crime — it is not an element of attempted kidnapping and need not, for that reason, be alleged in an indictment for the latter offense.

The defendant nevertheless contends that the element must be alleged and proven to differentiate attempted class A felony kidnapping from attempted class B felony kidnapping.  He cites State v. Glanville, 145 N.H. 631 (2000), in which we held that "[t]he indictment did not properly charge the defendant with the class A felony of attempted armed robbery" when the indictment improperly alleged the element with which the State sought to elevate the offense from class B felony robbery to class A felony robbery.  Glanville, 145 N.H. at 634.  In Glanville, it was

> undisputed that the State intended for the indictment to charge the defendant with a violation of paragraph (b) of RSA 636:1, III, which requires that the defendant be armed with an object that "reasonably appeared to the victim to be . . . a deadly weapon." The indictment, however, alleged only that the defendant was armed with a BB gun "which reasonably appeared to be a deadly weapon."

Id. (citation omitted).

Glanville did not hold, as the defendant asserts, that charges alleging "attempted crimes, for which there are varying levels of offense provided by statute, must include the element that elevates the crime to a higher level."  As we noted in State v. Bean, 153 N.H. 380 (2006), "[i]n Glanville, the State, although not required to do so under Johnson, attempted to charge the defendant with a specific variant of the crime allegedly attempted, but failed to accurately set forth that variant in the indictment."  Bean, 153 N.H. at 384; see Johnson, 144 N.H. at 178.  Indeed, Glanville recognized that all that was required "[t]o charge the defendant with attempted armed robbery, class A felony, [was for] the indictment . . . to allege that the defendant (1) with a purpose to commit armed robbery, (2) committed acts constituting a substantial step toward the commission of that crime."  Glanville, 145 N.H. at 634 (emphasis added); cf. Casanova, 164 N.H. at 566 (holding that because statutory variants of an underlying crime are not elements of an attempt to commit the underlying crime, "jurors [are] not required to unanimously find which specific [statutory variant] the defendant intended to commit; it [is]

sufficient that they unanimously conclude[] that the defendant intended to commit [any of the applicable statutory] variant[s]").

Accordingly, the indictment in this case could have either alleged that the defendant attempted to commit class A felony kidnapping, or alleged the element that would have made the underlying crime, if completed, a class A felony. The indictment, however, did neither. Rather, it simply alleged that the defendant acted with a purpose that the crime of kidnapping be committed. We therefore conclude that it was insufficient to charge the defendant with class A felony attempted kidnapping. We note that the defendant does not challenge the sufficiency of either the indictment or the evidence with respect to supporting a conviction for class B attempted kidnapping; in fact, he argues that we "must reverse [his] sentence and remand for resentencing on a class B felony level offense."

The State contends that "jurisdictions that have considered the argument advanced by the defendant in this appeal, and which have been tasked with interpreting kidnapping statutes similar to New Hampshire's, have agreed that a defendant convicted of attempted kidnapping is guilty, and may be sentenced, under the more severe statutory penalty provision." The cases cited by the State, however, were decided under legal or statutory frameworks different from ours, in that we, unlike those jurisdictions, have treated failure to voluntarily release the victim unharmed as an element to be proven by the State. Compare LaRose, 127 N.H. at 154, with Laraby v. State, 710 P.2d 427, 428 (Alaska Ct. App. 1985) (noting release of victim is a "partial affirmative defense"), Rainwater v. State, 943 P.2d 727, 728 (Ariz. 1997) (en banc) (rejecting as "erroneous" the "implication . . . that kidnapping is presumptively a class 4 felony by reason of the two-step incentive reduction . . . and is raised to class 2 if the victim is not voluntarily and safely released"); State v. Alexander, 871 A.2d 972, 975 (Vt. 2005) (noting voluntary release of victim is an affirmative defense that defendant must raise and prove); and Rathbun v. State, 257 P.3d 29, 38 (Wyo. 2011) (stating release of victim is mitigating conduct that defendant must prove). Accordingly, we do not find these cases persuasive and decline to follow them.

For the foregoing reasons, we affirm the defendant's kidnapping conviction, vacate his sentence, and remand for sentencing consistent with class B felony standards, cf. LaRose, 127 N.H. at 155; Goodwin, 118 N.H. at 870. Issues raised in the defendant's notice of appeal but not briefed are deemed waived. See Casanova, 164 N.H. at 569.

Affirmed in part; vacated in part; and remanded.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

9