**William NORTHINGTON, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

NO. 2013–CA–000153–MR

Court of Appeals of Kentucky.

RENDERED: MARCH 13, 2015; 10:00 A.M.

BRIEF FOR APPELLANT: Elizabeth B. McMahon, Assistant Public Defender, Louisville, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Todd D. Ferguson, Assistance Attorney General, Frankfort, Kentucky

BEFORE: ACREE, CHIEF JUDGE; JONES AND KRAMER, JUDGES.

*OPINION*

JONES, JUDGE:

This matter is before us following Appellant William Northington's conditional guilty plea entered in Jefferson Circuit Court. As part of his plea, Northington reserved the right to appeal the circuit court's denials of his pretrial suppression motions. For the reasons more fully explained below, we AFFIRM IN PART, VACATE IN PART and REMAND for an evidentiary hearing complete with findings of fact with regard to victim Joshua Melton's identifications of Northington.

## I. BACKGROUND

On April 17, 2010, Joshua Melton, an auto mechanic, was beaten in the head with a tire iron while at Pro–Tint, his place of work. On April 5, 2012, the Jefferson County Grand Jury indicted Northington on charges of assault in the first degree and persistent felony offender in the first degree as related to the assault on Melton.

Northington's ex-wife, Tiffany Maxie, was also charged in connection with Melton's assault. Maxie provided information to police indicating that she drove Northington to Melton's place of business where he proceeded to assault Melton with the tire iron. She stated to police that the motive for the assault was a business dispute that she had with Melton regarding some tires she had purchased from him for her car.

During a pretrial hearing, the Commonwealth revealed that Maxie had made a deal whereby her charges would be dismissed in exchange for her testimony against Northington. It is apparent from the record that the Commonwealth planned to use Maxie's testimony at trial as the primary evidence through which Northington would be identified as Melton's attacker. However, Maxie died before Northington's trial, leaving the Commonwealth without the ability to use her testimony to tie Northington to the crime.

Prior to trial, Northington moved to preclude any in-court identification of him by the Commonwealth's witnesses at trial. Northington noted that according to the discovery provided by the Commonwealth, the three purported eyewitnesses to the incident—Larry Job, Donald Burns, and

William Breckenridge, did not provide a description of the perpetrator and were never asked to view photo packs. Additionally, Melton could only give a general description of the perpetrator as a heavyset, black male. When a detective, Detective Jones, asked Melton whether he would be able to look at photographs and identify a suspect, Melton told the detective that he would not be able to identify anyone because he had been hit on the head and knocked unconscious.

Northington also moved the trial court to dismiss the indictment against him based on the Commonwealth's failure to turn over potentially exculpatory evidence prior to trial. Shortly before trial, it came to light that a photo pack may have been prepared by the first detective to work on this case, Detective Newton,[1] but that photo pack could not be located. Northington first became aware of the possible existence of this photo pack when his investigator spoke with Melton shortly before the trial. Melton told the investigator that the Commonwealth had shown him a photo pack and that he identified someone in it. A memorandum prepared by Detective Jones at the time he took over the case from Detective Newton, however, indicates that Detective Newton had not shown any photo packs to Melton.

At some point, Melton later told the Commonwealth that Detective Newton had shown him a photo pack, but that he did not identify anyone from that photo pack because it contained only "young black males." By the time of Northington's trial, Detective Newton could not remember whether he showed the photo pack to Melton or not.

The circuit court entertained oral arguments on the suppression motions, but did not hold an evidentiary hearing or enter written findings before denying the motions in their entirety. The circuit court also denied Northington's motion to dismiss the indictment, but indicated it would consider giving an adverse inference instruction if Northington could demonstrate that the Commonwealth had prepared a photo pack and subsequently lost it.

After the court's rulings, Northington entered a conditional guilty plea wherein he reserved the right to appeal the trial court's ruling concerning the photo pack shown to Melton and his motion to preclude the Commonwealth's other witnesses from making in-court identifications.

This appeal followed.

### I. Standard of Review

We review the trial court's decision on the admissibility of evidence under an abuse of discretion standard. *King v. Commonwealth*, 142 S.W.3d 645, 649 (Ky. 2004). Under this standard, we will not disturb the trial court's ruling unless it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

### II. Analysis

#### A. Suppression of Melton's In–Court Identification

 The Due Process Clause forbids the admission of identification testimony where there exists a "very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (hereinaf-

---

1. The detective that initially handled the case, Detective Newton, retired in the middle of the investigation and the case was taken over by Detective Jones. After the pretrial hearing, the Commonwealth supplied three photo packs that were assembled by Detective Jones, but were supposedly never shown to any witnesses.

ter "*Biggers*"); *Oakes v. Commonwealth,* 320 S.W.3d 50, 56 (Ky.2010); *Dillingham v. Commonwealth,* 995 S.W.2d 377, 383 (Ky.1999). A suggestive pretrial identification can impermissibly taint later in-court identifications by the same witness. *Moore v. Commonwealth,* 569 S.W.2d 150, 153 (Ky.1978).

 In Kentucky, to evaluate the admissibility of an in-court identification by a witness following an allegedly suggestive pretrial identification by the same witness, we follow the two-step approach outlined by the United States Supreme Court in *Biggers.* *See Grady v. Commonwealth,* 325 S.W.3d 333, 353 (Ky.2010). In *Grady,* the Kentucky Supreme Court explained the analysis as follows:

> when a defendant alleges that an in-court identification has been tainted by a pre-trial identification, a court must answer two questions: (1) was the first, pre-trial identification unduly suggestive; (2) if the pre-trial identification was unduly suggestive, does there exist an independent basis to support the reliability of the in-court identification so that the unduly suggestiveness of the pre-trial identification becomes moot.

*Id.* To determine whether an independent basis of reliability exists, the court must consider, under the totality of the circumstances, the five *Biggers'* factors: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time be-

tween the crime and confrontation. *Id.*; *King,* 142 S.W.3d at 649; *Savage v. Commonwealth,* 920 S.W.2d 512 (Ky.1995).

 *Grady* further instructs us that "when materials used for a pre-trial lineup are lost before the defendant has an opportunity to scrutinize their content," the defendant is entitled to a rebuttable presumption that the materials shown to the witness were "unduly suggestive." *Grady,* 325 S.W.3d at 354.

Our review of this case is frustrated because the trial court did not conduct a full evidentiary hearing on Northington's motion to suppress Melton's in-court identification. Likewise, the trial court failed to make any written findings of fact with respect to the motion. The trial court simply presumed that any pretrial identification material shown to Melton was not suggestive. Accordingly, it determined that further inquiry was not warranted.

The record reveals that there was a great deal of confusion regarding whether Melton was shown a photo pack by Detective Newton, and, if so, whether he identified his alleged attacker. It is also unclear whether anyone resembling Northington was included in any photographs that were shown to Melton.[2] Under these circumstances, we believe that the trial court erred by failing to conduct a suppression hearing for the purpose of resolving the conflicting evidence surrounding the missing photo pack and Melton's identification of Northington.

Kentucky Rules of Criminal Procedure (RCr) 9.78 [3] provides:

---

**2.** It is also unclear whether another African-American male named Northington was included in the photo pack. It is also unclear whether Melton was shown a photo pack containing this other Northington or whether he was made aware that someone named Northington was included in the photo pack.

**3.** RCr 9.78 was the criminal rule in effect at the time Northington moved for suppression. It was deleted by Supreme Court Order 2014–22, effective January 1, 2015. Motions for suppression are now governed by RCr 8.27(2), which states as follows: "(2) Hearing. The court shall conduct a hearing on the

If at any time before trial a defendant moves to suppress, or during trial makes timely objection to the admission of evidence consisting of ... (c) witness identification, the trial court shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling.

■■■ This rule "does not require that the defendant move for an evidentiary hearing." *Mills v. Commonwealth,* 996 S.W.2d 473, 481 (Ky.1999) *(overruled on other grounds by Padgett v. Commonwealth,* 312 S.W.3d 336 (Ky.2010)). "Instead, the rule mandates that a trial court shall hold an evidentiary hearing outside of the presence of the jury whenever a defendant moves to suppress" a witness identification. *Id.* "Nevertheless, failure to hold an evidentiary hearing on a motion to suppress is subject to harmless error review." *Hunt v. Commonwealth,* 304 S.W.3d 15, 27 (Ky.2009). Where there are material or substantial factual disputes, however, the trial court's failure to conduct an evidentiary hearing accompanied by written findings cannot constitute harmless error. *Matlock v. Commonwealth,* 344 S.W.3d 138, 139 (Ky.App.2011).

We are hard pressed to envision a situation where there would be more factual uncertainty surrounding a witness's possible pretrial identification than the present. Because the trial court did not conduct an evidentiary hearing, we do not know what Melton would have testified to under oath. What is certain is that the record is conflicting regarding what Melton was shown and whether it led to an identification of the perpetrator. Likewise, it is unclear whether Melton has an independent mem-ory of the perpetrator given the nature of the attack and his prior statements to investigators or whether the photographs that the police showed to him could have somehow suggested identifying facts to him.

Our criminal rules vest the trial court with the authority to make such factual determinations, but only after conducting a proper evidentiary hearing. Accordingly, we remand this action to the circuit court for a hearing on Northington's motion to suppress Melton's in-court identification.

On remand, the trial court should make findings on the record regarding whether Melton was shown a photo pack during the pretrial investigation. If the trial court determines that Melton was shown a photo pack as part of the pretrial investigation, and the Commonwealth cannot provide the photo pack to Northington, then the trial court must apply the rebuttable presumption as set forth in *Grady,* 325 S.W.3d at 354. To be clear, this is a rebuttable presumption, not an absolute finding. The Commonwealth could adduce evidence to show that the identification procedure was not suggestive and overcome the presumption. Whether such evidence might exist, however, is not apparent from the record.

If, after applying the presumption in Northington's favor, the trial court determines that the pretrial identification was suggestive, it shall then evaluate whether an "independent basis to support the reliability of [Melton's] in-court identification" exists after analyzing the five *Biggers'* factors. If the trial court cannot find an independent basis of reliability, it must exclude Melton's in-court identification.

record and before trial on issues raised by a motion to suppress evidence. No jury and no prospective juror shall be present at any such hearing."

### B. In–Court Identification by Other Witnesses

■ Melton also argues that the trial court erred by failing to conduct a proper inquiry regarding his motion to suppress any in-court identification of him by the Commonwealth's other three proposed witnesses (Larry Job, Donald Burns, and William Breckenridge). It is unclear from the record how any of these individuals were associated with the assault on Melton. What is clear, however, is that none of these individuals had given a prior description of the perpetrator or participated in any pretrial identification process.

Northington argues that asking these witnesses to identify him for the first time in court would be unduly suggestive because he will be the only African–American male sitting at counsel's table. He analogizes this proposed in-court identification to the kind of pretrial show-up the Kentucky Supreme Court found inherently suggestive in *Merriweather v. Commonwealth*, 99 S.W.3d 448, 451 (Ky.2003). The *Merriweather* court held that because show-ups are so inherently suggestive, the trial court must establish that an independent basis of reliability exists (per *Biggers*) before allowing them to be introduced as evidence. *Id.*

We understand the logic behind Northington's argument in this regard; likewise, we are mindful that several other courts throughout the country have adopted it. *See Commonwealth v. Crayton*, 470 Mass. 228, 21 N.E.3d 157, 173 (2014); *Kennaugh v. Miller*, 289 F.3d 36, 47 (2nd Cir.2002); *United States v. Murray*, 65 F.3d 1161, 1168–69 & n. 6 (4th Cir.1995); *United States v. Hill*, 967 F.2d 226, 232 (6th Cir. 1992); *United States v. Rundell*, 858 F.2d 425 (8th Cir.1988). However, we are also mindful that an equal number of courts have rejected this approach and have expressly limited *Biggers* to pretrial identifications. *See Byrd v. State*, 25 A.3d 761, 767 (Del.Supr.2011); *State v. King*, 156 N.H. 371, 934 A.2d 556 (2007); *State v. Lewis*, 363 S.C. 37, 609 S.E.2d 515 (2005).

This issue, however, is not one of first impression in Kentucky. In *Russell v. Commonwealth*, 490 S.W.2d 726, 727–28 (Ky.1973), the court held that the defendant was not entitled to acquittal on the basis that there was nothing to corroborate a witness's first time, in-court identification of him. *Id.* ("We can hardly believe that the time has arrived when an accused defendant is constitutionally entitled to a controlled line-up procedure as a condition precedent to the receiption [sic] of evidence by in-court identifications untainted by any possibly suggestive prior contacts supervised by law enforcement authorities."). Although the facts of *Russell* are not on all fours, it provides strong backing for the Commonwealth's position. Clearly, the *Russell* court believed that reliability should only be assessed by the trial court where some suggestive pretrial identification process was used.

Even though *Russell* was decided several decades ago, we have not found anything to suggest that it is not still controlling law in this Commonwealth. In fact, the only case law we have located from our Supreme Court on the issue indicates that *Biggers* does not apply to first time identifications made in court. In *Thompson v. Commonwealth*, an unpublished opinion, our Supreme Court explained:

> [W]e must point out that the *Biggers* analysis only applies to pretrial confrontations. As such, any suggestion by Appellant that the in-court identification during the trial was unduly suggestive under the *Biggers* test is not well taken. What *Biggers* does allow is for a later in-court identification to be prohibited if a pretrial confrontation was unduly suggestive.

*Thompson v. Commonwealth*, No. 2003–SC–0252–MR, 2004 WL 2624165, at *6

(Ky. Nov. 18, 2004). While we recognize that *Thompson* is unpublished and, therefore, not binding precedent, we believe it provides guidance in this instance.[4] It suggests that Kentucky has not extended *Biggers* to in-court identifications. In light of *Russell* and *Thompson*, we believe any such extension should come from the Kentucky Supreme Court, not from our Court.

Accordingly, based on the existing case law of this Commonwealth, we believe that the trial court's failure to conduct an evidentiary hearing with respect to the in-court identifications by Larry Job, Donald Burns, and William Breckenridge was harmless error. There is no allegation that these three witnesses were subjected to any pretrial identification procedures (suggestive or otherwise). As such, the trial court was not required to conduct a *Biggers* analysis before allowing them to identify Northington for the first time in court.

## IV. Conclusion

For the reasons set forth above, we AFFIRM IN PART as related to the trial court's denial of Northington's motion to suppress any in-court identification by Larry Job, Donald Burns, and William Breckenridge; VACATE IN PART as related to the trial court's denial of Northington's motion to suppress any in-court identification by Joshua Melton; and REMAND for an evidentiary hearing in conformity with this Opinion.

ALL CONCUR.

---

**4.** We recognize that unpublished opinions are non-binding on this panel. In accordance with Kentucky Rules of Civil Procedure 76.28(4)(c), however, we may consult such opinions for guidance when there is no published authority directly on point.